IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARGENTUM MEDICAL, LLC | : | No. 3:07 cv 6769 |
| Plaintiff, | : | Hon. George W. Lindberg |
| v. | : | Magistrate Judge Jeffrey Cole |
| NOBLE BIOMATERIALS, and<br>DERMA SCIENCES, INC., | : | |
| Defendants. | : | |

**DEFENDANT NOBLE BIOMATERIALS' MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS OR TO TRANSFER**

**PRELIMINARY STATEMENT**

In its Amended Complaint, plaintiff, Argentum Medical, LLC ("Argentum Medical"), seeks to pursue a patent infringement claim against defendant, Noble Biomaterials, Inc. ("Noble"), in Illinois even though Noble is organized under Delaware law, maintains its principal place of business in Scranton, Pennsylvania, and has no Illinois offices or employees, does not regularly conduct business in Illinois and has not sold any of the allegedly infringing products in this State. There is no basis for Argentum to pursue these claims in this jurisdiction because the Court lacks personal jurisdiction over Noble and venue is not properly laid in this District. Plaintiff's Amended Complaint should be dismissed on these jurisdictional grounds.

Should the Court retain jurisdiction, the Amended Complaint should be dismissed on the merits for failure to specify sufficiently the products which allegedly infringe the patent or provide any explanation of how the patent is supposedly infringed. Argentum Medical's initial Complaint suffered from these same deficiencies and Noble had previously filed a Motion to Dismiss. Despite having Noble's Motion to Dismiss before it when filing its Amended Complaint, Argentum Medical failed to remedy the deficiencies in its pleading.

The primary changes in the Amended Complaint do not relate to Noble at all, and instead set forth purported false advertising claims against defendant, Derma Sciences Inc. ("Derma"), one of Noble's distributors. (Amended Complaint, ¶¶ 11-27). The only amendment that relates to Noble is the allegation that the allegedly infringing products fall under the category of "wound care and burn care products sold under the trade name SilverSeal®." This allegation still fails, however, to place Noble on notice of which of its products are allegedly at issue because several products are sold under this brand.

Moreover, the Amended Complaint completely fails to identify how these products allegedly infringed the patent at issue. Argentum Medical alleges nothing more in support of its claims for relief than that a patent was issued in June 2007 for a type of wound dressing and that unspecified SILVERSEAL® products allegedly infringe that patent. (*Id.*, ¶ 6). This clearly is an insufficient basis upon which to pursue a patent infringement action.

Alternatively, the Amended Complaint should be transferred to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404 for the convenience of the parties and witnesses and in the interests of justice. As the patent inventor is in Georgia, the defendants in Pennsylvania and New Jersey respectively, and the remaining potential witnesses located in other states, there is no reason to impose upon the resources of this Court and the citizens of Illinois to resolve this matter. It is appropriate to transfer this action to the Middle District of Pennsylvania because it is the District with the most significant contacts with the litigation and a prior related litigation between the parties was resolved there.

### BACKGROUND

As is set forth in the Verification of Joel M. Furey, which is attached hereto and marked Exhibit "A," Noble is a Delaware corporation that maintains its principal place of business and

sole manufacturing facility in Scranton, Pennsylvania.[1] (Furey Verification, ¶ 3.) It has been engaged, through various predecessors-in-interest, in the textile business for nearly one hundred and forty years. (*Id.*, ¶ 4.) Since 1977, Noble (through its wholly owned subsidiary, Sauquoit Industries, LLC, a Pennsylvania limited liability company) has produced metallized (silver coated), thin diameter fibers and fabrics that it markets under the X-STATIC® brand. (*Id.*, ¶ 4.) X-STATIC® fibers are utilized in the manufacture of devices that protect against static electricity and that provide electromagnetic shielding. (*Id.*)

As it has been long recognized that silver kills virtually every type of bacteria, fungus and virus, over twenty years ago, Noble began exploring whether X-STATIC® fibers and fabrics could be utilized in bandages or for other antimicrobial purposes. (*Id.*, ¶ 5.) Historically, silver could not be used for its antimicrobial properties because it also destroyed healthy tissue. It was determined that, as a result of the manner in which Noble coats the fibers and fabrics, silver ions are released at such a rate that they destroy the microbes without damaging healthy skin.

Several years later, Noble began selling X-STATIC® fibers and fabrics for use in the manufacture of bandages and other medical products. (*Id.*) More recently, Noble has sold X-STATIC® fibers and fabrics to manufacturers of uniforms and work wear, sportswear, high-performance socks, protective gear, clothing for the military and aerospace garments for NASA. (*Id.*, ¶ 6.) Metallized fibers and fabrics are included in these garments to eliminate odor and thereby allow extended use between washings. Metallized fibers and fabrics serve this function because silver kills the odor causing bacteria. (*Id.*)

---

[1] Joel M. Furey is Noble's Executive Vice President Strategy and Business Development. When it moved to dismiss the original Complaint, Noble Jeffrey B. Keane, Noble's Chief Executive Office, provided a verification in this case and was deposed. At present, Jeffrey B. Keane is out of the country on business and is unable to execute the verification. Therefore, Noble has substituted Joel M. Furey's verification.

In 2005, Noble began to market its own line of bandages, burn wraps, burn gloves and tubular components (liners to be used under orthopedic casts). (*Id.*, ¶ 7.) These products are sold under the SILVERSEAL® trademark. (*Id.*) Noble primarily sells SILVERSEAL® products through distributors. All of its sales to distributors are made outside of Illinois. (*Id.*, 10.) Derma is Noble's primary distributor. (*Id.*) At the present time, Derma sells the vast majority of the SILVERSEAL® products it purchases to the military in Philadelphia and no SILVERSEAL® products have been sold in Illinois since the Patent issued. (Declaration of Robert C. Cole, attached to Derma's Motion to Dismiss or Transfer the Complaint, ¶¶ 9-10.)

By 1993, non-party, A. Bart Flick, M.D., had begun researching whether metallized fibers not only have antimicrobial properties, but also promote wound healing and relieve pain. Although his specific theories seem to have changed over time, Dr. Flick generally articulates the opinion that the skin's normal electric charge is disrupted when wounded. As metallized fibers are highly conductive, Dr. Flick opines that they help restore the body's normal electric charge to the wounded area when used in bandages and thereby promote healing and reduce pain. (*See e.g.*, Patent No. 7,230,153, Exhibit "A" to the Amended Complaint, Cols. 6 and 11-12.) Dr. Flick purchased metallized fibers and fabrics from Noble, which it is believed he used in this research. He was a founder of non-party Argentum International, which marketed wound dressings manufactured from metallized fibers purchased from Noble.

On July 11, 2000, the U.S. Patent and Trademark Office ("PTO") granted Dr. Flick Patent No. 6,087,549 (the "'549 Patent") on a multi-ply wound dressing that he claimed was sufficiently conductive to have wound healing and analgesic properties. This Patent was assigned to Argentum International. Dr. Flick subsequently filed applications for patents that he claims are continuations or continuations-in-part of the '549 Patent. One of those applications was granted as Patent No. 6,861,570 (the "'570 Patent"), and claimed upon a wound dressing

that Dr. Flick asserted was sufficiently conductive (having a resistance of no greater than $1000\Omega/cm^2$) to have wound healing and analgesic properties.

After Noble began marketing SILVER SEAL® products, Argentum Medical, which claims to be the exclusive licensee of the '549 Patent and all continuations or continuations-in-part thereof, demanded royalties from Noble on those products. Argentum Medical also submitted notices to Noble's customers in which Noble believed Argentum Medical threatened to pursue patent infringement litigation against those customers if they continued to sell SILVER SEAL® products. In response, Noble filed a Complaint in the United States District Court for the Middle District of Pennsylvania seeking a declaratory judgment of non-infringement and invalidity and asserting causes of action under Section 43(a) of the Lanham Act and for commercial disparagement. By Memorandum Opinion and Order dated June 27, 2006, a copy of which is attached hereto and marked Exhibit "C," the Court granted Argentum Medical's Motion to Dismiss. It held that there was an insufficient threat of an infringement action to create subject matter jurisdiction over Noble's declaratory judgment claims. In so ruling, the Court held that a letter Argentum Medical's counsel wrote stating that it would not attempt to enforce the '570 Patent against single layer products, like Noble's, removed any threat of an infringement claim for that Patent.[2] (Memorandum Opinion, p. 8.)

On December 12, 2007, Argentum Medical commenced the instant action by filing a Complaint purporting to state claims against Noble and Derma for infringement of United States Patent No. 7,230,153 (the "'153 Patent"). The PTO issued the '153 Patent to Dr. Flick in June 2007 and it is a purported continuation-in-part of the '549 Patent. The '153 Patent claims upon a wound dressing having at least one layer of metallized fabric having a surface resistance of 10

---

[2] The Court also held that Noble had not sufficiently pled facts from which a jury could conclude that Argentum Medical's infringement claims were made in bad faith and dismissed the Lanham Act and commercial disparagement claims on that basis.

5

$\Omega/cm^2$ and 0.001 $\Omega/cm^2$, and that supposedly promotes wound healing and provides analgesic relief by restoring the skin's normal electric charge to the injured body parts.

Noble moved to dismiss the Complaint on the grounds that Argentum had failed to adequately plead a patent infringement claim. It furthermore moved to dismiss on the grounds of lack of personal jurisdiction and venue and, alternatively, moved to transfer this action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404. While Noble's Motion to Dismiss was pending, Argentum moved to amend its Complaint primarily to assert putative Lanham Act claims against Derma. Argentum claimed that its proposed Amended Complaint also cured any deficiency in its identification of the allegedly infringing products. Before Noble responded to this Motion, it was granted and Argentum filed its Amended Complaint on April 21, 2008. In its Amended Complaint, Argentum merely claims that Noble has infringed the '153 Patent by "making, using, offering for sale and/or selling the inventions of the 153 Patent including certain wound care and burn care products sold under the tradename SilverSeal®." (Amended Complaint, ¶ 6.)

Argentum Medical's additional allegations have no bearing upon Noble's jurisdictional defenses and Motion to Transfer. On the merits, merely qualifying its broad claims of patent infringement by claiming that the accused (infringing) products "include certain" SILVER SEAL® products is insufficient to cure Argentum's failure specify the accused products because the claims are not limited to those products. Even if it were, SILVER SEAL® to is a brand name for a line of products and, thus, it is impossible to determine from this allegation what wound and burn care products supposedly infringe the Patent. The Amended Complaint also contains no explanation of how products of a type that have been sold and used for nearly twenty years to kill microbes infringe a recently issued patent for wound care dressings intended to promote wound healing and provide pain relief. This omission is particularly glaring given that

6

none of Noble's products are sold with the claim that they promote wound healing or provide pain relief. Accordingly, Noble moves to dismiss the Amended Complaint or to transfer venue.

## ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Noble

Even though Argentum purports to assert claims under federal law, as the Patent Law does not provide for nationwide service of process, Noble is not subject to service unless personal jurisdiction could otherwise be asserted over it in Illinois. Cytomedix, Inc. v. Perfusion Partners & Associates, Inc., 243 F. Supp. 2d 786, 791 (N.D. Ill. 2003); Daetwyler Corp v. Meyer, 762 F.2d 290 (3d Cir. 1985) (although patent rights arise from federal statute, personal jurisdiction is analyzed with respect to contacts with the forum state and explicitly rejecting a "national contacts theory."). It is Argentum's burden to establish personal jurisdiction over Noble. RAR, Inc. v. Turner Diesel, LTD, 107 F.3d 1272, 1276 (7th Cir. 1997).

Personal jurisdiction may be either general or specific. International Medical Group, Inc. v. American Arbitration Association, Inc., 312 F.3d 833, 847 (7th Cir. 2002). For general jurisdiction to exist, the defendant's contacts with the forum must be "so continuous and systematic that [it] could reasonably foresee being haled into court in that state for any matter." Id. Specific jurisdiction exists under the "minimum contacts" test where: (1) "the defendant has purposefully availed itself of the privilege of conducting activities within the forum state;" and (2) "the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice." Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549 (7th Cir. 2004). To satisfy its burden of proving that a defendant has sufficient contacts with a jurisdiction to anticipate being subject to suit there, a plaintiff must demonstrate that the defendant purposefully directed business activities at the forum state and the dispute before the court arose directly from those activities. RAR, 107 F.3d at 1277. The nexus between the contacts claimed to justify the

assertion of specific jurisdiction and the suit is significant because it, "gives a degree of predictability to the legal system that allows potential defendants to secure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1985)). As such, a "loose casual connection between a suit and a defendant's forum contacts" cannot serve as the basis for personal jurisdiction. Id. at 1277.

The conclusory assertions in the Amended Complaint that Noble regularly conducts business in Illinois, that allegedly infringing products have been sold in this District and that Noble has induced infringement in Illinois are insufficient to meet Argentum's burden of establishing jurisdiction. On this basis alone, the Complaint should be dismissed for lack of personal jurisdiction. Nevertheless, even though not required to do so, Noble has submitted Mr. Furey's Verification to establish the lack of any nexus with Illinois. Pursuant to the Order the Court entered with respect to Noble's Motion to Dismiss the Original Complaint, Noble also produced Mr. Keane to be deposed on jurisdictional issues. Not only did Argentum Medical fail to develop any basis to refute the averments made in Mr. Furey's Verification, Mr. Keane testified as to the extensive investigation upon which this Verification is based. (A copy of the transcript of the deposition of Mr. Keane is attached hereto and marked Exhibit "B".) This investigation included Mr. Furey, as well as Noble's Director of Marketing for the Wound Care Division, Chief Financial Officer, Customer Service Representative and a Legal Assistant (Keane dep., at 14-15), and involved, among others, a review of a list of all of Noble's employees, distributors and purchasers, its shipping records and invoices, and its internal sales tracking software. (Keane dep. at 23-24, 25-26, 28, 39.)

Mr. Furey's Verification establishes that Noble it is a Delaware Corporation with its principal place of business and manufacturing facility in Scranton, Pennsylvania. (Furey

Verification, ¶ 3.) It has no offices, facilities or employees in Illinois, and does not regularly conduct business there. (Id., ¶ 9.) As such, Noble plainly lacks the type of continuous significant contacts with Illinois necessary to establish general jurisdiction.

In a patent infringement action, the requisite nexus between the defendant's forum related activities and the plaintiff's claims necessary to demonstrate specific jurisdiction is established only where the allegedly infringing products are produced, distributed or sold in the forum. RAR, 107 F.3d at 1277; Stairmaster Sports/Medical Products v. Pacific Fitness Corp., 916 F. Supp. 1049, 1053 (W.D. Wash. 1994) (court could not assert personal jurisdiction based upon sales of products unrelated to the patent); Structural Panels, Inc. v. Texas Aluminum Industries, Inc., 814 F. Supp. 1058, 1066 (M.D. Fla. 1992) (same). As is set forth in Mr. Furey's Verification (¶¶ 9 and 13), and as Mr. Keane confirmed in his deposition, Noble has not distributed SILVER SEAL® products in Illinois or sold them to any entity in Illinois. Derma also asserted in its Memorandum of Law in Support of its initial Motion to Transfer, that it "resells most of [the Noble products it distributes] to the Defense Department through a purchasing agent located near Philadelphia, Pennsylvania." (Derma February 26, 2008 Memorandum, p. 11). Derma also has made clear that it has not sold any SILVERSEAL® dressings in Illinois since the Patent was issued. (Id.)[3]

There is no basis on this record to assert personal jurisdiction over Noble. As such, its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) should be granted.

---

[3] Noble's sole contact with Illinois with respect to the matters involved in this action is that representatives have attended a large, industry-wide trade show in Chicago on at least two occasions and a third smaller show for potential distributors. (Furey Verification, ¶ 12). Noble, however, did not make any sales or attempt to make any direct sales to Illinois customers at these trade shows. (Id.) Merely attending trade shows in Illinois is insufficient to confer subject matter over a defendant. David White Instruments, LLC v. TLZ, Inc., No.Civ.A. 02-7156, 2003 WL 21148224, *6 (N.D. Ill. May 16, 2003).

### B.  The Amended Complaint Should Be Dismissed For Lack of Venue Under 28 U.S.C. § 1400 and Fed. R. Civ. P. 12(b)(3).

Argentum also bears the burden of proving that venue is proper in this judicial district. Brunswick Corp. v. Suzuki Motors, Co., 575 F. Supp. 1412, 1423 (E.D. Wis. 1983). A patent infringement claim "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Courts construe § 1400(b) narrowly. "[T]he patent venue statute should not be liberally construed in favor of venue. The requirement of venue in Section 1400(b) is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given 'liberal' construction." Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1184 (7th Cir. 1969).

As Noble does not maintain a regular and established place of business in Illinois, venue could only be proper if it is deemed to reside here.[4] For the purpose of § 1400(b), a defendant resides in every district where it is subject to personal jurisdiction. See, e.g., VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574 (Fed. Cir. 1990) (finding that 28 U.S.C. § 1391(c) provides the definition of a corporation's residence for the purposes of § 1400(b)). In multiple district states, the plaintiff must establish that the defendant has sufficient minimum contacts with the specific judicial district, rather than the entire state. See 28 U.S.C. § 1391(c).

Noble is not a "resident" of the Northern District of Illinois because there is no personal jurisdiction over it in Illinois. Since Noble has insufficient contacts with the entire state, it also has insufficient minimum contacts with the Northern District. Noble is a resident of neither Illinois nor the Northern District of Illinois and venue is lacking under Section 1400(b).

---

[4] Under the second clause of Section 1400, Argentum must establish both that Noble committed an act of infringement in the Northern District of Illinois and that it has a regular and established place of business in this district. 28 U.S.C. § 1400(b). The failure to establish either is fatal and requires dismissal. Air Factors, 363 F. Supp. at 95-96.

### C. If the Court Concludes There Is a Basis To Exercise Jurisdiction, the Amended Complaint Should Be Dismissed with Prejudice for Failure to Allege Fundamental Elements of a Patent Infringement Claim

A patent infringement complaint must identify the accused product. See McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1355-56 (Fed. Cir. 2007); Ricoh Co., Ltd. v. Asustek Computer, Inc., 481 F. Supp. 2d 954, 959 (W.D. Wis. 2007); Anticancer Inc. v. Xenogen Corp., -- F. Supp. 2d --, 2007 WL 2345025, *4 *Aug. 13, 2007)); see also FED. R. CIV. P. 84, Form 16 (providing sample patent infringement complaint identifying the alleged infringing product). Where a plaintiff fails to identify the infringing product, there is no case or controversy. Laitram Corp v. The Cambridge Wire Cloth Co., 919 F.2d 1579, 1583 (Fed. Cir. 1990) ("the parties have identified no specific product made, used, or sold by CWC . . . . On that basis, there was no actual case or definite and concrete controversy over which the district court might have exercised jurisdiction").

Simply alleging Noble has made or sold the inventions of the '153 Patent "including certain" SILVER SEAL® "wound care and burn care products" does not satisfy infringe Argentum's burden of identifying the accused product(s). In making this allegation, Argentum is not limiting its claims to SILVER SEAL® products. Further, as plaintiff recognizes, SILVERSEAL® is a brand for a number of different products. (*See also*, Furey Verification, ¶ 7.) As such, referring generally to SILVERSEAL® products does not identify any specific product. Argentum Medical cannot seriously contend that all products sold under the SILVERSEAL® brand, including under cast liners, burn wraps and burn gloves, infringe a Patent covering "wound dressings." In any event, its allegation that "certain" of these wound and burn care products infringe the Patent establishes that it does not contend that the accused products include all products sold under the SILVER SEAL® mark. The Court and defendants are left to guess as to which products Argentum Medical claims infringe the '153 Patent.

In addition, a complaint for patent infringement must "describe . . . the means by which the defendants allegedly infringe." Phonometrics, Inc. v. Hospitality Franchisee, 203 F.3d 790, 794 (Fed. Cir. 2000); see also McZeal, 501 F.3d at 1357 (noting that the plaintiff "described the means by which Spring Nextel allegedly infringes").

> A complaint for patent infringement satisfies the . . . limited criteria of Rule 8(a), when the Plaintiff: (1) alleges ownership of the asserted patent, (2) names each individual defendant; (3) cited the patent that is allegedly infringed, (4) <u>describes the manner in which the defendants allegedly infringe</u>, and (5) identifies the specific sections of the patent law invoked.

Home & Nature, Inc. v. Sherman Specialty Co., Inc., 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004) (emphasis added) (citing Phonometrics, 203 F.3d at 794).

Argentum Medical makes no attempt to state in what manner the SILVERSEAL® (or other) products allegedly infringe the '153 Patent. Even as to Noble's actual wound care products, Argentum Medical makes no effort to explain how it can claim a right to preclude Noble from utilizing a product for its long known antimicrobial purposes based upon a Patent covering wound healing and pain relief. It also does not allege which of Noble's wound care products fall within the conductivity range specified in the Patent. Argentum Medical furthermore fails to allege how a patent covering "wound dressings" could apply, for example, to tubular components that are placed under orthopedic casts to prevent itching and to prevent the growth or colonization of bacteria not related to a specific wound.

Having been placed on notice by Noble's initial Motion to Dismiss of the deficiencies in its pleadings, there is no excuse for Argentum Medical's failure to identify the accused products and the basis upon which they are alleged to infringe the '549 Patent. Noble should not be forced to seek this information through discovery because identifying the purportedly infringing products and stating how they infringe are essential elements of Argentum Medical's claim. Noble should not be required to incur the costs and distraction of defending a patent

infringement action unless Argentum Medical first has identified in accordance with Federal Rule of Civil Procedure 11 what products allegedly infringe the Patent and the basis upon which they are alleged to infringe.

### D.  If the Court Does Not Dismiss, This Case Should Be Transferred To The Middle District Of Pennsylvania

Assuming *arguendo* that this Court had personal jurisdiction over Noble and venue were proper, this case should be transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404. Transfer should be granted under Section 1404 where venue is proper in both the transferor and the transferee courts, and it would serve the convenience of the parties and the witnesses and is in the interests of justice to do so. Brunswick Bowling Corp. v. Quibica USA, Inc., No.Civ.A. 05-3603, 2005 WL 2367764, at *1 (N.D. Ill. Sept. 26, 2005) (Lindberg, J.). There can be no dispute that venue is proper in the Middle District of Pennsylvania because Derma is a Pennsylvania corporation and Noble has its principal place of business in Scranton, Pennsylvania. See 28 U.S.C. § 1391(c).

Litigating this case in the Northern District of Illinois would not serve the convenience of the parties or the witnesses. No witnesses and documents relating to the infringement claim will likely be located in Illinois because Noble and Derma are headquartered in Scranton and Princeton, New Jersey respectively, and the inventor and assignee, according to the Patent, are in Georgia. While Argentum Medical is located in Illinois, it is likely to provide little evidence on any issue material to its infringement claim and, in any event, its principals would be deposed in Chicago even if the case were transferred to another district.

Moreover, the interests of justice would not be served by this Court retaining jurisdiction as this case has an insufficient nexus with the Northern District of Illinois to justify imposing upon its resources Court and the citizens of this District to resolve this Pennsylvania based case. The only connection this case has to the Northern District of Illinois is the location of Argentum

Medical's offices. As this Court has previously found in patent infringement cases, transfer of venue is appropriate when the sole connection with this District is the locus of the plaintiff or plaintiff's counsel and when the documents pertinent to the development and sale of the allegedly infringing documents are located in another district. See Timebase Pty Ltd. v. Thomson Corp., No.CIV.A. 07-460, 2007 WL 772946, at *3 (N.D. Ill. Mar. 9, 2007) (Lindberg, J.); Brunswick Bowling, 2005 WL 2367764, at *4; First Health Group Corp. v. Allcare Health Management Sys., No.Civ.A. 01-1790, 2001 WL 686777 (N.D. Ill. June 15, 2001) (Lindberg, J.); Hemstreet, 1990 WL 77920, at *5.

The Middle District of Pennsylvania is an appropriate forum to which to transfer this matter because Noble is headquartered there and Derma is organized under the laws of the Commonwealth of Pennsylvania. Further, Derma's Princeton New Jersey offices are located relatively close to the federal courthouse in Scranton. Moreover, this action is a continuation of a dispute pending between Noble and Argentum Medical since 2005 and litigation was already pursued in the Middle District of Pennsylvania. Considerations of judicial economy mandate that the entire dispute be resolved in the forum in which it was initially filed. Furthermore, transfer of this action to the Middle District will not delay its resolution. As reported on the United States Court's Website, for the year ending December 2007, the Middle District's 7.6 month median time interval to resolution of all cases compares favorably with this Court's 6.2 time interval, and its 24.5 month time interval for resolving cases requiring trial is shorter than this Court's 29.0 month interval. (www.uscourts.gov., Judicial Business of the U.S. Courts 2007, Table C-5.)

## **CONCLUSION**

For the reasons stated above, Argentum's Amended Complaint should be dismissed for lack of personal jurisdiction and venue or, in the alternative, this matter should be transferred to the United States District Court for the Middle District of Pennsylvania. If the Court retains jurisdiction, the Amended Complaint should be dismissed with prejudice

    Respectfully submitted,

    s/ Josh M. Kantrow
    Lori S. Nugent (Attorney ID No. 6196627)
    Josh M. Kantrow (Attorney ID No. 6231027)
    COZEN O'CONNOR
    222 South Riverside Plaza, Suite 1500
    Chicago, Illinois 60606


    Robert W. Hayes (admitted *pro hac vice*)
    COZEN O'CONNOR
    1900 Market Street
    Philadelphia, PA 19103
    (215) 665-2094
    Rhayes@cozen.com


    Attorneys for Defendant,
    Noble Biomaterials, Inc.

Dated: May 12, 2008