IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARGENTUM MEDICAL, LLC., ) | |
| ) | |
| Plaintiff, ) | No. 07 CV 6769 |
| ) | |
| v. ) | Hon. George W. Lindberg |
| ) | |
| ) | Magistrate Judge Jeffrey Cole |
| NOBLE BIOMATERIALS, and ) | |
| DERMA SCIENCES, INC., ) | |
| ) | |
| Defendants. ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
NOBLE'S MOTION TO DISMISS OR TRANSFER AND TO
<u>DERMA'S MOTION TO TRANSFER OR STAY THE ACTION</u>

KEITH V. ROCKEY
KATHLEEN A. LYONS
JOSEPH A. FUCHS
AVANI MACALUSO
 Rockey, Depke & Lyons, LLC
 Sears Tower, Suite 5450
 233 South Wacker Drive
 Chicago, Illinois 60606
 Telephone:  312-277-2006

Attorneys for Plaintiff

TABLE OF CONTENTS

I. Procedural History .................................................................................................. 1

II. Facts Relevant To Defendants' Motions............................................................... 4

III. Why Both Motions Should Be Denied In Their Entirety .................................... 5

    A. Noble's Contacts With Illinois Are Sufficient For
       This Court To Exercise Personal Jurisdiction Over It ........................................ 7

    B. Argentum's Amended Complaint States
       A Cause Of Action For Patent Infringement ..................................................... 10

    C. Argentum's Choice Of Illinois, Its Home Forum,
       Should Not Be Disturbed .................................................................................... 13

CONCLUSION............................................................................................................... 15

TABLE OF AUTHORITIES

3D Systems, Inc. v. Aarotech Laboratories, Inc.
    (Fed. Cir., 1998), 160 F.3d 1373 .................................................................................. 5, 6

Beverly Hills Fan Co. v. Royal Sovereign Corp.
    (Fed. Cir., 1994), 21 F.3d 1558 ..................................................................................... 8, 9

Brunswick Bowling v. Qubica USA, Inc.,
    (N.D. Ill., 2005), 2005 WL 2367764 .......................................................................... 13, 14

Electronics For Imaging, Inc. v. Coyle
    (Fed. Cir., 2003), 340 F.3d 1344 ...................................................................................... 6

FDIC v. Citizens Bank & Trust Co.
    (7th Cir., 1979), 592 F.2d 364 ........................................................................................ 13

Gulf Oil Corp. v. Gilbert
    (1947), 330 U.S. 501 ...................................................................................................... 13

Honeywell, Inc. v. Metz Apparatewerke
    (7th Cir., 1975), 509 F.2d 1137 ..................................................................................... 8, 9

In re National Presto Industries, Inc.
    (7th Cir., 2003), 347 F.3d 662 ........................................................................................ 13

International Shoe Co. v. State of Washington
    (1945), 326 U.S. 310 ..................................................................................................... 5, 6

Jackson v. Illinois Bell Telephone Company
    (N.D. Ill., 2002), 2002 WL 1466796 ............................................................................... 11

One World Technologies, Ltd. v. Robert Bosch Tool Corp.
    (N.D. Ill., 2004), 2004 WL 1576696 ............................................................................... 12

Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.
    (Fed. Cir., 2000), 203 F.3d 790 ....................................................................................... 10

SRAM Corporation v. Sunrace Roots Enterprise Co., Ltd.
    (N.D. Ill., 2005), 390 F.Supp.2d 781 ................................................................................ 6

World-Wide Volkswagen Corporation v. Woodson
    (1980), 444 U.S. 286 ......................................................................................................... 6

Noble Biomaterials ("Noble") has moved to dismiss or transfer this action under Rules 12(b)(2), 12(b)(3), 12(b)(6), Federal Rules of Civil Procedure. Derma Sciences, Inc. ("Derma") has moved this Court to transfer or stay this action. For the reasons set forth herein, Plaintiff, Argentum Medical, Inc. ("Argentum") believes that both motions should be denied in their entirety.

As to the jurisdictional issues, Noble's motion and supporting verified statement wholly ignore significant contacts Noble has with Illinois through its sale of the accused SilverSeal® products into Illinois and its substantial and continuous sales of silver-nylon raw materials to customers in Illinois. Both defendants' motions to transfer are essentially premised on the ground that it would be more convenient for them to litigate in Noble's home forum -- the Middle District of Pennsylvania. However, the defendants both fail to prove that the balance of conveniences strongly favor transfer away from Argentum's choice of its home forum. And, finally, Argentum's Amended Complaint recites all of the necessary elements for a patent infringement action with sufficient specificity  When the entire record is examined, it is clear that (a) Noble has sufficient contacts with Illinois for the Court to exercise personal jurisdiction over it, (b) venue is proper in Illinois, (c) the Amended Complaint states a cause of action for patent infringement and (d) Argentum's selection of its home forum should not be disturbed.

I.      Procedural History

Argentum filed its Complaint alleging infringement of its newly issued patent, U.S. Patent No. 7,230,153 ("the '153 patent"), by the actions of Noble and Derma in making, using, offering for sale or selling wound care and burn care products having silver-coated nylon

wound contact surfaces. In response to the Complaint, both defendants filed motions to dismiss or transfer.

Derma's motion did not challenge this Court's personal jurisdiction over it. Rather, Derma moved under Rule 12(b)(6) to dismiss the case against it or, alternatively under 28 U.S.C. § 1404(a), to transfer the case to the United States District Court for the Middle District of Pennsylvania. The thrust of Derma's motion to dismiss was that the Complaint did not identify by name the allegedly infringing products.

Noble's initial motion ("Noble's First Motion to Dismiss") did challenge this Court's personal jurisdiction over it. Noble moved to dismiss this action under Rules 12(b)(2), 12(b)(3) and 12(b)(6) or to transfer the case to the Middle District of Pennsylvania under 28 U.S.C. § 1404. Noble's motion was supported by the sworn statement of its Chief Executive Officer, Jeffrey B. Keane.

In response to those motions, Argentum sought to consolidate the briefing schedules and to take expedited jurisdictional discovery. The Court granted Argentum's request. Argentum then served Noble and Derma with five document requests and five interrogatories limited to the personal jurisdiction issue. Noble was also served with a Notice of Deposition of Mr. Keane setting April 22, 2008, as the date for the deposition. As to that deposition, at Noble's request, this Court entered an order (Document No. 38) that Mr. Keane's deposition should be taken at Noble's facilities in Scranton, Pennsylvania before May 2, 2008. Discovery on substantive issues was stayed pending a ruling on the motions.

Notwithstanding this Court's order for expedited discovery, Noble refused to produce any documents or answer any interrogatories relating to Noble's sales of all products --

accused products and its other products -- in Illinois (Exhibits A and B, respectively). Thus, Argentum was denied the necessary responses to written discovery to show that Noble had sufficient contacts with Illinois for this Court to exercise general jurisdiction over Noble.[*]

Noble continued to disrupt discovery. On April 16, 2008, Noble's counsel advised that, due to Mr. Keane's unavailability, she could not provide an alternative date for his deposition until April 21, 2008. Noble finally offered up dates for Mr. Keane's deposition and produced him for deposition in Philadelphia -- not Scranton -- on April 29, 2008 at 3:00 p.m. If Noble's goal was to increase the cost of discovery, by inconveniencing Argentum's counsel with last minute changes to travel plans, it succeeded.

During the deposition of Mr. Keane, Noble's counsel objected to questions directed to Noble's sales of non-accused products into Illinois (Exhibit C, pp. 9-12). Noble's counsel finally agreed to allow certain questions into general jurisdiction to the extent they comported with his understanding of the law of general jurisdiction, but not beyond.

On May 12, 2008, Noble re-filed its motion to dismiss or transfer ("Noble's Second Motion to Dismiss"). While Noble's First Motion to Dismiss was supported by the verified statement of Mr. Keane -- the person deposed by Argentum -- Noble's Second Motion to Dismiss was supported by a verified statement of another -- Mr. Joel M. Furey. Derma filed its Answer to the Amended Complaint and Counterclaims on the same day. Then, on May 16, 2008, Derma filed its amended motion to transfer or stay (Document No. 57), dropping its

---

[*] Because there is no protective order in place, Argentum agreed to treat all documents produced by the defendants as "Confidential -- Attorneys' Eyes Only". Notwithstanding that agreement, virtually every document produced by Noble was redacted in some fashion. Despite repeated requests, Noble refused to produce non-redacted documents.

request for dismissal under Rule 12(b)(6). Notwithstanding its request for a stay and the stay of discovery entered by this Court (Document No. 38), on June 2, 2008, Derma served its discovery requests on Argentum.

II.     Facts Relevant To Defendants' Motions

Defendant Noble is in the business of metallizing nylon (Exhibit C, p. 6). Noble sells "…a filament based product, a staple based product, a foam based product and additionally [Noble sells] finished wound care products" (Exhibit C, pp. 7-8). Noble manufactures and sells the accused products, namely, finished wound care products, under the trade name SilverSeal® (Exhibit C, p. 8). Most of the sales of the accused products are made by fifteen authorized distributors (Exhibit C, pp.27-28). One of the distributors, Medico-Mart, Inc., offers for sale the accused products in Illinois (Exhibit C, pp. 37-39). Indeed, Medico-Mart, Inc. proclaims on its website that it "offers a complete line of medical/surgical, laboratory, and pharmaceutical products to physician offices and clinics throughout Wisconsin, northern Illinois, and southeastern Minnesota" (Exhibit D).

Mr. Keane testified that Noble did not prohibit sales of the accused products into Illinois. He did not know if any of the authorized distributors had offices in Illinois or warehouses in Illinois (Exhibit C, pp. 31-32). Mr. Keane also was not surprised to hear that Medico-Mart was offering the accused products for sale in Illinois (Exhibit C, pp. 37-39).

Noble's SilverSeal® products are indeed sold in Illinois. As set forth in the Declaration of Ms. Rebecca Lyons (Exhibit E), Ms. Lyons ordered a SilverSeal® product from a company called Medical Supply Group in April of 2008 (Exhibit E, ¶ 4). The SilverSeal® product was shipped to Ms. Lyons' residence in Illinois along with an invoice shortly thereafter

-4-

(Exhibit E, ¶ 5). The invoice (attached to Ms. Lyons' declaration as Exhibit 1) identifies that the Medical Supply Group is located in Deerfield Beach, Florida and that the item was shipped from Indiana. The Medical Supply Group website identifies Derma Sciences, an authorized distributor of Noble products, as the manufacturer of the accused product.[*] Notably, the Medical Supply Group was not identified as an authorized distributor of Noble's products.

Noble also sells other products into Illinois. Mr. Keane admitted that Noble has customers in Illinois (Exhibit C, pp. 45-46). Noble sells silver-nylon filament, staple fiber and/or foam products to customers in Illinois (Exhibit C, pp. 48-50). At this time, such products are not accused of infringement.

III.  **Why Both Motions Should Be Denied In Their Entirety**

As this Court knows, the courts of the United States may exercise personal jurisdiction over nonresident defendants only in those cases where there are sufficient contacts between the forum state and the defendant to satisfy due process (International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 316). This Court, in determining the issue of personal jurisdiction in the context of this case, should apply Federal Circuit law when determining personal jurisdiction involving patent claims (3D Systems, Inc. v. Aarotech Laboratories, Inc. (Fed. Cir., 1998), 160 F.3d 1373, 1377).

In determining whether personal jurisdiction over a defendant residing outside of the forum state is proper, both the Seventh Circuit and the Federal Circuit will look to whether the forum state's long-arm statute permits service of process and whether the asserted jurisdiction

---

[*] Derma has not objected to this Court's exercise of personal jurisdiction over it.

would be consistent with due process (SRAM Corporation v. Sunrace Roots Enterprise Co., Ltd. (N.D. Ill., 2005), 390 F.Supp.2d 781, 785).

As set forth in Electronics For Imaging, Inc. v. Coyle (Fed. Cir., 2003), 340 F.3d 1344, 1348, this Court, in determining the limits of due process on the extraterritorial reach of the Illinois Long Arm Statute, must look to the "minimum contacts" of Noble to determine whether it "should reasonably anticipate being haled into court" in Illinois (World-Wide Volkswagen Corporation v. Woodson (1980), 444 U.S. 286, 297). And that test turns on whether Noble engaged in activities purposely establishing "minimum contacts" with Illinois (Electronics For Imaging, 340 F.3d at 1350).

There are two theories by which personal jurisdiction may be established, namely general jurisdiction or specific jurisdiction. General jurisdiction may be found where Argentum can prove by a preponderance of the evidence that Noble has contacts with Illinois which are "continuous and systematic general business contacts". The constitutional parameters of such general jurisdiction demand that the contacts with the state of Illinois be "continuous" and "substantial" at a level where a party who enjoys the benefits of conducting business in Illinois should be willing to bear the correlative burden of submitting to the Illinois Courts (International Shoe, 326 U.S. at 317-19).

In cases like the one here, the other type of jurisdiction -- specific jurisdiction -- is determined by satisfying a three-part test laid down by the Federal Circuit. Exercise of specific jurisdiction turns on (3D Systems, 160 F.3d at 1378):

> ". . . (1) whether the defendant purposefully directed its
> activities at residents of the forum; (2) whether the claim
> arises out of or relates to those activities; and (3) whether

-6-

assertion of personal jurisdiction is reasonable and fair."

When the undisputed facts established by the record here are examined, this Court's conclusion will be clear. The exercise of personal jurisdiction over Noble is proper -- Noble has "minimum contacts" with the state of Illinois and certainly has "purposely established" such contacts with this state.

    A.    Noble's Contacts With Illinois Are Sufficient For
           This Court To Exercise Personal Jurisdiction Over It

Noble uses at least fifteen authorized distributors to sell its SilverSeal® products. When Noble ships the accused product to its distributors, in most instances, it does not know the ultimate destination of the products. Noble places no restriction on its distributors as to what states its products are sold in and does not require its authorized distributors to report on the locations of where the accused products are sold (Exhibit C, p. 32). Thus, it is reasonably foreseeable the accused products could end up in virtually any state including Illinois. There can be little doubt that Noble's accused products will and do reach Illinois -- Noble's authorized distributor Medico-Mart offers Noble's SilverSeal® products for sale to companies in northern Illinois (Exhibit D) .

To end any debate, Argentum has indeed recently purchased one of the accused products in Illinois. As set forth in the accompanying declaration of Ms. Rebecca Lyons, she was asked to contact the Medical Supply Group to attempt to purchase a SilverSeal® wound contact dressing (Exhibit E, ¶ 3). Ms. Lyons placed an order with the Medical Supply Group for a SilverSeal® product and that product was promptly shipped to Ms. Lyons' residence in Illinois (Exhibit E, ¶¶ 4-5). While the Medical Supply Group is not one of the authorized distributors

identified by Noble, it is a distributor of an authorized distributor, namely Derma, the other defendant here. Thus, the accused products are indeed available and sold in Illinois.

In Beverly Hills Fan Co. v. Royal Sovereign Corp. (Fed. Cir., 1994), 21 F.3d 1558, 1564), the Court of Appeals for the Federal Circuit explored the question of whether personal jurisdiction was proper over a foreign defendant that made ceiling fans, the accused products, which were then shipped by a distributor into stores in Virginia. The Federal Circuit held that it did not violate due process or the Virginia long-arm statute to exercise jurisdiction over the foreign defendant, even though it was undisputed the defendant made no direct sales of the accused product into Virginia. The exercise of jurisdiction was appropriate because "…the distribution channel formed by defendants and Builders Square was intentionally established, and that defendants knew or reasonably could have foreseen, that a termination point of the channel was Virginia." (21 F.3d at 1564).[*]

Similarly, Noble has purposefully established a distribution channel into Illinois by forming relationships with at least fifteen authorized distributors who can sell products into Illinois. Thus, it is reasonably foreseeable to Noble that it could be haled into court in Illinois. Accordingly, under the theory of specific jurisdiction, this Court has personal jurisdiction over Noble.

Noble has sufficient contacts with Illinois to satisfy the requirements for the exercise of general jurisdiction over it by this Court. Noble is conducting substantial and

---

[*] Many years ago, the Court of Appeals for the Seventh Circuit adopted the stream of commerce theory in a patent infringement case, holding that jurisdiction was proper over a German entity that sold allegedly infringing products into Illinois through a distributor (Honeywell, Inc. v. Metz Apparatewerke (7th Cir., 1975), 509 F.2d 1137, 1141, 1144).

continuous business in Illinois by selling other products -- not only the accused products -- to customers in Illinois (Exhibit C, pp. 45-50).  Noble's CEO Jeffrey Keane has admitted that Noble sells silver nylon products into Illinois.  Thus, the exercise of personal jurisdiction, either general or specific, over Noble is appropriate here.

Noble's statements in its brief that it has no contacts with Illinois are contradicted by the testimony of its own witness and the public record.  While Noble believes that it can insulate itself by claiming ignorance of any contacts with Illinois because most of Noble's sales are made through authorized distributors under no obligation to report the locations of where they sell Noble's SilverSeal® products.  Under <u>Beverly Hills</u> and <u>Honeywell</u>, the fact that Noble has placed its accused products in the stream of commerce to be sold in the various states of the United States is enough.  Mr. Keane's ignorance of the sale to Ms. Lyons and Medico-Mart's sales of the SilverSeal® product in Illinois is not enough to defeat jurisdiction.  Noble cannot be allowed to avoid jurisdiction in Illinois by relying on studied ignorance of the significant contacts it has established, either through its own actions, or concerted efforts with others, in Illinois.

In sum,  Noble has sufficient contacts with the state of Illinois for this Court to exercise both general and specific jurisdiction over Noble.  And, since personal jurisdiction is proper, venue is proper.  Noble's motion to dismiss for lack of personal jurisdiction and for improper venue should be denied.

B.  Argentum's Amended Complaint States
    A Cause Of Action For Patent Infringement

Argentum's Amended Complaint recites sufficient information to support its claim for relief and to allow Noble to answer the complaint. A properly pleaded complaint for patent infringement requires allegations of ownership of the '153 patent, an identification of each defendant, citation to the patent allegedly infringed, a description of the manner in which the '153 patent is allegedly infringed and citation to the specific sections of the patent law being invoked (Phonometrics, Inc. v. Hospitality Franchise Systems, Inc. (Fed. Cir., 2000), 203 F.3d 790, 794).

Argentum's Amended Complaint meets these requirements. The Amended Complaint recites an ownership interest in the patent-in-suit and identifies the patent-in-suit as follows (Exhibit F, ¶ 5):

> "On June 12, 2007, United States Letters Patent No. 7,230,153 B2 ("the '153 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Multilayer Conductive Appliance Having Wound Healing and Analgesic Properties." A true and correct copy of the '153 Patent is attached as Exhibit A hereto. AM is the exclusive licensee under the '153 Patent and has the right to bring suit thereon."

The Amended Complaint also identifies Noble as a defendant (Exhibit F, ¶ 2) and, in paragraph 6, describes the manner in which Noble allegedly infringes the '153 patent (Exhibit F, ¶ 6):

> "Noble has, on information and belief, unlawfully and intentionally infringed the '153 Patent in this District and elsewhere by making, using, offering for sale and/or selling the inventions of '153 Patent including certain wound care and burn care products sold under the tradename SilverSeal®. On information and belief, Noble has induced

> infringement and/or has contributed to the infringement of
> the '153 Patent in this District and elsewhere."

Finally, Argentum's Amended Complaint recites that the claim against Noble arises under the Patent Laws of the United States (Exhibit F, ¶ 4) and specifically cites to 35 U.S.C. §§271(a), 271(b), 271(c), 284 and 285 (Exhibit F, pp. 8-9).

Noble argues that "SILVERSEAL® is a brand for a number of different products" and, as such, "referring generally to SILVERSEAL® products does not identify any specific product" (Noble Memorandum, p. 11; Furey Verification, ¶7). Mr. Furey's verified statement points to "…bandages, burn wraps, burn gloves and tubular components (liners to be used under orthopedic casts)…" as products being sold under the SilverSeal® trade name (Furey Verification, ¶7). It is clear, based upon Noble's own statements, that its list of products is sufficiently limited for Noble to answer an allegation that certain of the SilverSeal® products -- wound care and burn care products -- infringe the '153 patent. Indeed, as the Court found in <u>Jackson</u> v. <u>Illinois Bell Telephone Company</u> (N.D. Ill., 2002), 2002 WL 1466796, * 3 (Exhibit H), a general description of the allegedly infringing device or article is sufficient detail to defeat a Rule 12(b)(6) motion.

Noble also argues that Argentum "makes no attempt to state in what manner the SILVERSEAL® (or other) products allegedly infringe the '153 Patent" (Noble's Memorandum, p. 12).* However, Argentum satisfied this requirement when it alleged in paragraph 6 of the Amended Complaint, recited above, that Noble has intentionally infringed the '153 patent by

---

\*   Noble repeatedly argues that the '153 patent covers wound healing or pain relief or the like. The '153 patent claims are directed to an article of manufacture -- a wound dressing having a specified resistance value -- not a method for using that article.

making, using, selling… products under the SilverSeal® name.  Argentum further alleges that Noble has infringed the '153 patent by inducing infringement and by contributing to infringement.  No additional allegations are required. As the Court in <u>One World Technologies, Ltd.</u> v. <u>Robert Bosch Tool Corp.</u> (N.D. Ill., 2004), 2004 WL 1576696, * 2 (Exhibit I), found:

> "Rule 8(a) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  In **pleading** a claim for **patent** infringement, 'the plaintiff need only state sufficient facts to put the alleged infringer on **notice**" (emphasis original).

As for reciting the means or manner in which the accused product infringes the '153 patent, the Court in <u>One World Technologies</u> found the following recitation sufficient (2004 WL 1576696 at * 2; Exhibit I):

> "Defendants have infringed and are now directly infringing, inducing infringement by others, and/or contributorily infringing one or more claims of the '976 patent within this District or elsewhere within the United States by making, using, selling, and/or offering to sell products falling within the scope of such claims, all without authority or license from Plaintiffs."

Argentum's Amended Complaint , likewise, provides sufficient details for Noble to answer and nothing more is required (Exhibit F, ¶ 6).

      Accordingly, Argentum's Amended Complaint recites a cause of action for patent infringement. Noble's motion to dismiss for failure to state a claim upon which relief can be granted is without merit.

### C. Argentum's Choice Of Illinois, Its Home Forum, Should Not Be Disturbed

Argentum, the plaintiff here, has a principal place of business in Chicago, Illinois, and two of its principals Gregg Silver and Thomas Miller, and the director of sales Gary Blaeser all reside in the Chicago area (Exhibit F, ¶ 1; Exhibit G, p. 2). Thus, Argentum has strong ties to this judicial district and this factor should weigh heavily against transferring this action to the Middle District of Pennsylvania (FDIC v. Citizens Bank & Trust Co. (7th Cir., 1979), 592 F.2d 364, 368 . "[U]nless the balance is strongly in favor of defendant, the plaintiff's choice of forum should rarely be disturbed" (In re National Presto Industries, Inc. (7th Cir., 2003), 347 F.3d 662, 664 quoting, Gulf Oil Corp. v. Gilbert (1947), 330 U.S. 501, 508). Both Noble and Derma have failed to show that the balance of convenience strongly favors litigating in the Middle District of Pennsylvania, and, therefore, the defendants' motions to transfer should be denied.

The factors that must be considered in evaluating defendants' request for transfer are: (1) is venue proper in both forums, (2) does the transfer benefit the convenience of the parties and witnesses, and (3) is the transfer in the interest of justice (Brunswick Bowling v. Qubica USA, Inc., (N.D. Ill., 2005), 2005 WL 2367764, * 1; Exhibit J). Unlike Brunswick, the balance of those factors here weighs against transfer. As such, defendants' motions to transfer should be denied.

There is no dispute that venue is proper in both forums. That, however, is where any agreement between Argentum and defendants ends. In evaluating the second factor -- the convenience of the parties -- the "factors include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses and the costs of obtaining the

-13-

attendance of witnesses; and (4) convenience to the parties, their residences and abilities to bear the expense of trial in a particular forum" (2005 WL 2367764 at * 2; Exhibit J).  As already noted, Argentum's choice of the Northern District of Illinois should be given substantial weight because of its strong ties to this judicial district.

The situs of material events does not weigh heavily for or against transfer.  Since the '153 patent is directed to an article of manufacture, infringement can occur in any location in the United States where the article can be found.  Likewise, the relative ease of access to the sources of proof also does not weigh heavily for or against transfer.  The location of the defendants' places of business and Argentum's place of business along with the potentially discoverable documents in such locations and the potential witnesses does not weigh in favor of transfer -- that consideration is "a neutral factor since the convenience of the 'employee-witnesses… is generally assigned little weight" (2005 WL 2367764 at * 3; Exhibit J).  The location and convenience of any non-party witnesses is also a neutral factor.  Argentum envisions taking discovery from each of Noble's fifteen authorized distributors, eleven of which are located outside of Illinois and Pennsylvania.  While Noble has identified four authorized distributors in Pennsylvania, the convenience or inconvenience to all parties is still the same -- they must attend third party depositions in Pennsylvania as well as the eleven third party depositions that will be taking place throughout the United States.

Finally, the relative ease of the parties to afford litigation in a distant forum weighs heavily in Argentum's favor.  Argentum is a small company compared to both Noble and Derma and has far less financial wherewithal to litigate in a distant jurisdiction than both of the defendants.  Thus, the private factors weigh heavily in favor of Argentum and against transferring this action to the Middle District of Pennsylvania.

The final factor to consider is whether the transfer is in the interest of justice.[*] As set forth at page 14 of Noble's Memorandum, the median time interval for resolving cases in the Northern District of Illinois is 6.2 months as compared to 7.6 months in the Middle District of Pennsylvania. The median time for resolving cases requiring trial is 29 months in this District versus 24.5 months in the Middle District of Pennsylvania. Such mixed results do not weigh in favor of transfer.

Considering all of the factors, both defendants have failed to prove the balance of conveniences strongly favor transfer away from Argentum's chosen forum.

## CONCLUSION

Noble's motion to dismiss or transfer and Derma's motion to transfer or stay should be denied.

    Respectfully submitted,

    /s/ Joseph A. Fuchs
    KEITH V. ROCKEY
    KATHLEEN A. LYONS
    JOSEPH A. FUCHS
    AVANI MACALUSO
     Rockey, Depke & Lyons, LLC
     Sears Tower, Suite 5450
     233 South Wacker Drive
     Chicago, Illinois 60606
     Telephone: 312-277-2006

    Attorneys for Plaintiff

---

[*] Noble refers to a declaratory judgment action that it brought against Argentum in 2005 (Noble Memorandum, p. 14), before the '153 patent even issued, referring to this action as a continuation of that earlier action. Since the present action involves a patent that did not exist at the time of Noble's 2005 action, it is clear this case is not a continuation of Noble's 2005 action.

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 4, 2008, true and correct copies of PLAINTIFF'S MEMORANDUM IN OPPOSITION TO NOBLE'S MOTION TO DISMISS OR TRANSFER AND TO DERMA'S MOTION TO TRANSFER OR STAY THE ACTION and EXHIBITS A-J (EXHIBIT B redacted) were filed electronically with the Clerk of Court using the CM/ECF System, which will provide electronic notice to the following attorneys for defendants:

> Martin L. Stern
> Arthur Gollwitzer III
> Christopher Parker
> MICHAEL BEST & FRIEDRICH LLP
> Two Prudential Plaza
> 180 North Stetson Ave., Ste 2000
> Chicago, IL 60601
>
> Lori S. Nugent
> Josh M. Kantrow
> Robert Hayes
> COZEN O'CONNOR
> 222 S. Riverside Plaza
> Suite 1500
> Chicago, IL 60606

I further certify that a copy of the foregoing was served by e-mail on the following:

> Robert Hayes
> COZEN O'CONNOR
> 1900 Market Street
> Philadelphia, PA 19103
> rhayes@cozen.com

Unredacted copies of Exhibit B were served on the above-identified counsel of record by e-mail on June 4, 2008.

/s/ Joseph A. Fuchs
One of Plaintiff's Counsel