# Unpublished Cases:

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.))**

Page 1

C
Allstate Ins. Co. v. Mathison
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
ALLSTATE INSURANCE COMPANY, an Illinois corporation, Plaintiff,
v.
Janice MATHISON, an individual; National Association of Professional Allstate Agents, Inc., a New York corporation; and Association Management Specialists, LLC, Defendants.
**No. 02 C 418.**

June 26, 2002.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.
**\*1** Plaintiff, Allstate Insurance Company ("Allstate"), filed a five-count complaint against Defendants, Janice Mathison ("Mathison"), the National Association of Professional Allstate Agents, Inc. ("NAPAA"), and Association Management Specialists, LLC ("AMS") (collectively "Defendants"), alleging false designation of origin and false sponsorship (Count I); willful infringement (Count III); trademark dilution (Count IV) under the Lanham Act, 15 U.S.C. §§ 1114(a)(1), 1125(a)(1)(A), (c) (2002); state law claims for computer tampering (Count II); and violation of the Illinois Anti-Dilution Act (Count V).

Mathison and AMS move, pursuant to Federal Rule of Civil Procedure 12(b)(2), (3), and (6), to dismiss for lack of personal jurisdiction, improper venue and failure to state a claim upon which relief may be granted. NAPAA moves, pursuant to Rule 12(b)(3), to dismiss for improper venue or, in the alternative, to dismiss Counts I, III, and IV, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction and Counts II and V, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

For the reasons that follow, Count II is dismissed and NAPAA's motion to transfer venue is granted.

*LEGAL STANDARD*

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power,* 111 F.3d 1312, 1319 (7th Cir.1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir.1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education,* 143 F.3d 351, 359 (7th Cir.1998).

**\*2** "Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'... he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.' " *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein,* 939 F.2d 463, 467 (7th Cir.1991).

The court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."*Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir.1999). The district court must review the complaint liberally, taking as true all well-pleaded allegations and the inferences that may be drawn from them. *See Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir.1999).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.))**

Page 2

*BACKGROUND*

For purposes of this Motion to Dismiss, the following allegations are taken as true.

Allstate is one of the largest providers of insurance products throughout the United States. Allstate has adopted and continuously used the Allstate name and the "Allstate" trademark and service mark in connection with its insurance products and services since 1931. It owns all the rights and interests in numerous United States trademark and service mark registrations (" 'Allstate' marks"). The "Allstate" marks are famous throughout Illinois and the United States. Allstate is the sole owner of registration rights in the domain name "allstate.com".

Mathison, a resident of Livonia, Michigan, is the Executive Director and sole employee of NAPAA. Mathison also owns AMS, which runs NAPAA's day-to-day activities and houses its offices.

NAPAA is a non-profit New York corporation that represents the interests of Allstate independent contractor agents and consumers by lobbying state legislatures and filing lawsuits against Allstate on behalf of its membership. NAPAA solicits members and monetary contributions to its Legal Fund. NAPAA maintains a website, www.napaausa.org. On this site, NAPAA devotes a page to a practice it terms "credit scoring". This page urges insurance agents to contact their clients and ask them to oppose the use of credit scoring. A message on this page directs agents to appear, and to encourage their clients to appear, at a series of public meetings on credit scoring. NAPAA also contends that Allstate's products and services are inferior because of Allstate's alleged use of credit scoring and expends resources on lobbying Allstate independent contractor agents, government and consumer organizations to support NAPAA's opposition to credit scoring.

On October 12, 2001, Mathison, acting on behalf and with full knowledge of NAPAA and AMS, knowingly sent, from an Earthlink, Inc. e-mail account, unsolicited bulk e-mails (commonly referred to as "spam") to approximately 175 Allstate agents. The e-mails were falsely designated such that they appeared to originate from "ELiddy@allstate.com," the e-mail address of the Chief Executive Officer and Chairman of Allstate, Edward M. Liddy ("Liddy"). The e-mails referenced a "notice of public meeting on credit scoring" and urged agents receiving the e-mail to speak out against credit scoring and to recruit their clients and consumers to do the same. The fraudulent e-mails were sent from Michigan to Allstate's mail servers in this judicial district in Illinois en route to their recipients. The fraudulent e-mails were configured so that it would automatically transmit a receipt notification whenever the e-mail was opened by a recipient. These receipt notifications were sent to Liddy's e-mail account at Allstate.

*3 The complaint also alleges that venue is proper in this district because a substantial part of the events giving rise to the claim occurred in this district, and Defendants are subject to personal jurisdiction in this district.

*DISCUSSION*

Mathison and AMS move to dismiss, arguing that (1) this Court lacks personal jurisdiction over them, (2) venue is improper in the Northern District of Illinois, and (3) the complaint fails to state a claim upon which relief may be granted. NAPAA moves to dismiss, arguing lack of subject matter jurisdiction, improper venue,[FN1] and failure to state a claim upon which relief may be granted. Alternatively, NAPAA moves to transfer venue to the Eastern District of Michigan.

> FN1. NAPAA did not object to personal jurisdiction in its motion to dismiss. Therefore, any such objection has been waived, *see*Fed.R.Civ.P. 12(h)(1); and NAPAA has submitted to the jurisdiction of this Court. If a defendant is a corporation, that corporation is deemed to reside in any judicial

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.))

Page 3

district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c) (2002). Because NAPAA is a corporation that is subject to personal jurisdiction in this district, venue as to NAPAA is proper in the Northern District of Illinois.

*Rule 12(b)(6)*

NAPAA argues that Count II fails to state a claim upon which relief may be granted because Illinois state law does not authorize civil actions for violation of subsection (a)(5) of section 16D-3 of the Illinois Criminal Code. The Illinois Criminal Code provides that a person commits the crime of computer tampering when he "falsifies or forges electronic mail transmission information or other routing information in any manner in connection with the transmissions of unsolicited bulk electronic mail through or into the computer network of an electronic mail service provider or its subscribers."720 Ill. Comp. Stat. 5/16D-3(a)(5) (2002). Section 16D-3 also authorizes civil actions by those who "suffer[ ] loss by reason of a violation of subsection (a)(4) of this Section." § 16D-3(c).

Count II alleges that Allstate is an electronic mail service provider and that NAPAA falsified or forged e-mail transmission information or other routing information and sent the forged e-mail in bulk form in violation of section 16D-3(a)(5). (Compl.¶¶ 54, 55, 56.) As was noted above, section 16D-3 only authorized civil actions for violations of subsection (a)(4) not subsection (a)(5). Therefore, Count II is dismissed.

NAPAA argues that Count V should be dismissed because it fails to state a claim for violation of the Illinois Anti-Dilution Act because the statute Allstate cites, 765 Ill. Comp. Stat. 1035/15 (2002), has been repealed. However, this basis does not require dismissal of Count V. The focus of whether Count V fails to state a dilution claim under Illinois law is not on whether Allstate has cited the correct statute but on "whether relief is possible under any set of facts that could be established consistent with the allegations."*Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992).

The Trademark Registration and Protection Act provides that:

[t]he owner of a mark which is famous in this State shall be entitled ... to an injunction against another person's commercial use of a mark or tradename, if the use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this Section.

765 Ill. Comp. Stat. 1036/65(a) (2002). Because relief is possible under section 1036/65(a) of the Trademark Registration and Protection Act, dismissal of Count V is improper.

*4 Defendants' motions to dismiss the remaining counts of Allstate's complaint will remain pending in light of this Court's other determinations as outlined below.

*Venue*

Section 1391(b) provides that:

[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Here, Allstate's action is founded on diversity of citizenship as well as federal question. Thus, § 1391(b) and *not*§ 1391(a) governs proper venue.

Allstate argues that venue is proper under §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.))**

Page 4

1391(b)(2) because a substantial part of the events giving rise to the action occurred in the Northern District of Illinois. The complaint alleges that the alleged fraudulent e-mails sent from Michigan passed through Allstate servers in Illinois en route to Washington and that delivery notifications were sent to Allstate's Chief Executive Officer here in Illinois. These allegations are insufficient to establish that venue is proper in this district. All of the challenged conduct occurred in Michigan: the alleged e-mails were sent an e-mail address from Michigan and falsely designated as being from Liddy in Michigan. The passage of the allegedly fraudulent e-mails through Allstate's server in Illinois while en route to their final destinations is too tenuous a connection to constitute a substantial part of the events giving rise to the action occurred in the Northern District of Illinois.

Moreover, venue in this district is also improper under the other subsections of § 1391(b). None of the Defendants reside in Illinois. 28 U.S.C. § 1391(b)(1). Rather, Defendants reside in the Eastern District of Michigan. There is another judicial district in which this action may be brought. 28 U.S.C. § 1391(b)(3). Therefore, venue as to Mathison and AMS is improper in the Northern District of Illinois.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."28 U.S.C. § 1406(a) (2002). This action could have been brought in the Eastern District of Michigan, where all Defendants reside. 28 U.S.C. § 1391(b). In the interest of justice, as is discussed in further detail below, this action is transferred to the Eastern District of Michigan.

*Transfer of Venue*

NAPAA moves to transfer venue to the Eastern District of Michigan because (1) all of alleged conduct occurred in the Eastern District of Michigan and (2) it does not have offices in the Northern District of Illinois while Allstate maintains offices in the Eastern District of Michigan. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a). NAPAA bears the burden of showing that the Eastern District of Michigan is more convenient. *Moore v. AT & T Latin Am. Corp.,* 177 F.Supp.2d 785, 789 (N.D.Ill.2001). Venue will not be transferred if such transfer merely shifts the inconvenience from one party to the other.*Moore,* 177 F.Supp. at 789. Venue would have been proper in the Eastern District of Michigan because NAPAA resides in that district. 28 U.S.C. § 1391(b)(1).

*5 This Court will transfer this case to the Eastern District of Michigan if so doing would be convenient for the parties or in the interest of justice. The Court will consider five factors:

(1) the plaintiff's choice of forum; (2) the location of the material events; (3) the residence of the parties; (4) their ability to bear the expense of a trial in a particular forum; (5) the relative ease of access to sources of proof in each forum, including the court's power to compel appearances of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses.

*Moore,* 177 F.Supp.2d at 789. "In ruling upon a motion to transfer under ...§ 1404(a), the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents."*Midwest Precision Servs., Inc. v. PTM Indus. Corp.,* 574 F.Supp. 657, 659 (N.D.Ill.1983).

Allstate chose the Northern District of Illinois as their forum and is a resident of Illinois. However, the material events, the sending of the alleged fraudulent e-mails, took place in Michigan; and NAPAA maintains its headquarters in Michigan. There is nothing to suggest Allstate is unable to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.))**

Page 5

bear the expense of suit in either forum. The second and fourth factors favor NAPAA.

With regard to the fifth factor, NAPAA, relying on the affidavit of Mathison, argues that Michigan is a more convenient forum because it will likely call the employees of AMS, residents of Michigan, as its primary witnesses and that a trial in Illinois would be prohibitively expensive. Allstate argues that Illinois is the more convenient forum because it will "be required to call witnesses to establish ownership over its e-mail system, the chain of events leading up to the discovery of the false e-mails, receipt of the delivery notices, and out-of-pocket expenses and damages that resulted from the e-mails."(Allstate's Opp'n NAPAA's Mot. Dismiss at 4.) However, Allstate has not submitted any affidavits identifying these witnesses.

Convenience of the witnesses is one of the most important factors to be considered in determining whether to transfer venue. *Moore,* 177 F.Supp.2d at 790 (quoting *Dunn v. Soo Line R.R. Co.,* 864 F.Supp. 64, 65 (N.D.Ill.1994)). Here, the fact that NAPAA's primary witnesses are located in the Eastern District of Michigan demonstrates that Michigan is the more convenient forum. It is in the interest of justice to transfer this action to the Eastern District of Michigan; and, therefore, NAPAA's motion to transfer venue is granted.

## CONCLUSION

For the reasons stated above, Count II of the complaint is dismissed. NAPAA's motion to transfer venue is granted. This action is hereby transferred to the Eastern District of Michigan.

IT IS SO ORDERED.

N.D.Ill.,2002.
Allstate Ins. Co. v. Mathison
Not Reported in F.Supp.2d, 2002 WL 1396951 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))**

Page 1

▷
International Molding Machine Co. v. St. Louis Conveyor Co.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
INTERNATIONAL MOLDING MACHINE COMPANY, Plaintiff,
v.
ST. LOUIS CONVEYOR CO., d/b/a ENGINEERED FOUNDRY SYSTEMS, Defendant.
No. 01 C 8305.

Aug. 12, 2002.

Illinois provider of foundry molds sued Missouri provider of sand delivery systems, alleging appropriation of trade secrets in connection with installation of equipment in Illinois foundry. Missouri company moved to dismiss for lack of personal jurisdiction, or alternatively for change of venue. The District Court, Manning, J., held that: (1) there was specific personal jurisdiction over Missouri company; (2) case was properly venued in Illinois; and (3) venue would not be transferred.

Motion denied.

West Headnotes

**[1] Constitutional Law 92 €→3965(4)**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(E) Civil Actions and Proceedings
         92k3961 Jurisdiction and Venue
            92k3965 Particular Parties or Circumstances
               92k3965(4) k. Manufacture, Distribution, and Sale. Most Cited Cases
   (Formerly 92k305(6))

**Federal Courts 170B €→76.25**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.25 k. Tort Cases. Most Cited Cases
Federal court sitting in Illinois had specific personal jurisdiction, consistent with due process, over Missouri company providing sand delivery systems for foundries, sued by Illinois corporation making mold handling systems for foundries, claiming that Missouri company misappropriated its trade secrets in process of ordering molds for foundry located in Illinois; nature of transaction presented possibility of being haled into court in state, Illinois had interest in case, and there was no unfairness in forcing Missouri company to litigate in Illinois. U.S.C.A. Const.Amend. 5.

**[2] Federal Courts 170B €→74**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk74 k. Particular Actions. Most Cited Cases
Determination that Missouri corporation was subject to suit in Illinois made venue of suit proper in Illinois. 28 U.S.C.A. § 1391(a),(c).

**[3] Federal Courts 170B €→110**

170B Federal Courts
   170BII Venue
      170BII(B) Change of Venue
         170BII(B)1 In General; Venue Laid in Proper Forum
            170Bk106 Determination in Particular Transferable Actions
               170Bk110 k. Patents, Copyrights and Trade Regulation. Most Cited Cases
Venue of misappropriation of trade secrets case would not be transferred from federal court in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))

Page 2

Illinois to one in Missouri, in interests of justice and for convenience of witnesses; party witnesses were found in both states, nonparty witnesses would find Illinois more convenient, Illinois deceptive practices statute would be involved, and court calendar congestion was not determinative factor. 28 U.S.C.A. § 1404(a).

MEMORANDUM AND ORDER

MANNING, District J.
*1 In this diversity action, plaintiff International Molding Machine Company ("IMMCO") claims that defendant St. Louis Conveyor, d/b/a Engineered Foundry Systems ("EFS") misappropriated its trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS § 1065/1, *et al.* EFS has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), asserting that this court cannot exercise personal jurisdiction over it and that venue is improper under 28 U.S.C. § 1391(a) and (c). Alternatively, EFS asks the court to transfer this case to the United States District Court, Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, these motions are denied.

I. Background

IMMCO is an Illinois corporation with its principal place of business in Illinois. IMMCO designs, manufactures, and services mold handling systems for use in foundries. EFS is a Missouri corporation with its principal place of business in Missouri. EFS designs, manufactures, installs and services sand delivery systems for use in foundries.

In early 2000, EFS contacted IMMCO to ask it to design, manufacture, and deliver a mold handling system for Kettler Casting Company for use at its Illinois foundry. In May of 2000, EFS contracted with IMMCO to purchase a mold handling system for installation at the Kettler foundry. During the course of the Kettler project, the parties regularly communicated with each other regarding the manufacture of the system. EFS employees and agents also visited IMMCO several times in connection with the project.

In November of 2000, EFS sent two employees to IMMCO to examine the equipment and witness a "dry run" of the system before IMMCO delivered it to Kettler. During that visit and pursuant to the parties' written agreement, IMMCO gave manuals, drawings, and other materials to the EFS employees. IMMCO provided this information to EFS so it could prepare maintenance booklets for Kettler to use when installing, servicing and maintaining the mold handling system. According to IMMCO, this information was comprised of trade secrets. IMMCO also alleges that, pursuant to the agreement, it gave EFS its trade secrets solely for use in the Kettler project and never authorized EFS to use its trade secrets for any other purpose.

In its complaint, IMMCO alleges that EFS subsequently used its trade secrets, without its express or implied consent, to manufacture a mold handling system for Kirsh Foundry, Inc. ("Kirsh"), located in Wisconsin. IMMCO claims that EFS' manufacture and sale of the system to Kirsh constitutes a violation of the ITSA. IMMCO also claims that EFS may be using its trade secrets in conjunction with other similar systems that EFS is currently bidding on.

For the purposes of establishing personal jurisdiction, IMMCO points out that EFS has contracted with at least eight other Illinois-based companies over the past 30 years, aside from the Kettler project. In connection with these projects, EFS has consistently sent employees to Illinois and has subcontracted with several other Illinois-based companies. EFS' business in Illinois has generated millions of dollars of revenue for the company. Finally, EFS advertises in two national magazines whose circulation reaches Illinois and belongs to two national trade organizations located in Illinois.

*2 On the other hand, EFS contends that it has no connection with Illinois other than its sales activit-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))

Page 3

ies with the state. Furthermore, EFS states that it has no offices, agents, employees, or property in Illinois. EFS also points out that it presently does not have a business relationship with any Illinois-based company.

II. Discussion

[1] EFS seeks to dismiss IMMCO's complaint for lack of personal jurisdiction and for improper venue. Fed.R.Civ.P. 12(b)(2) & 12(b)(3); 28 U.S.C. § 1391(a) & (c). Alternatively, EFS seeks to transfer this action to the United States District Court, Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a). For the following reasons, both of these motions are denied.

A. Personal Jurisdiction

In support of its motion to dismiss for lack of personal jurisdiction, EFS essentially raises two contentions. First, it argues that this court cannot assert personal jurisdiction under Illinois' long-arm statute. Second, it contends that the exercise of personal jurisdiction in this case does not meet either the federal or state constitutional due process requirements.

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) based on lack of personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *See* Fed.R.Civ.P. 12(b). The plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). In making its determination regarding personal jurisdiction, the court must resolve any factual disputes in the plaintiffs' favor, but must accept the allegations in the plaintiffs' complaint as true only to the extent that they are not controverted by other evidence in the record. *Id.* The court must also accept uncontested jurisdictional facts presented by the defendants as true. *Connolly v. Samuelson,* 613 F.Supp. 109, 111 (N.D.Ill.1985).

Where the court's subject matter jurisdiction stems from diversity of citizenship, as in this case, the court may assert personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 724 (7th Cir.1994). Under the Illinois long-arm statute, Illinois state courts have general jurisdiction over nonresident defendants "doing business" in Illinois and specific jurisdiction over nonresident defendants if the claims arise from their "transactions" in Illinois. 735 ILCS §§ 5/2-209(a) & (b).

The Illinois long-arm statute also contains a "catch-all" provision which allows Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. 735 ILCS § 5/2-209(c). Thus, jurisdiction is coextensive with federal due process requirements. *See, e.g., RAR, Inc. v. Tuner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits when a state may assert in personam jurisdiction over nonresident defendants. *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1878). To assert personal jurisdiction consistent with federal due process, a defendant must have (1) "certain minimum contacts with the forum state such that (2) the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*3 A court's assessment of personal jurisdiction under this standard depends on whether the "general" or "specific" jurisdiction is at issue. *RAR, Inc. v. Tuner Diesel Ltd.,* 107 F.3d at 1277, *quoting Helicopteras Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id.* at 1277. General jurisdiction is applicable when the lawsuit neither arose nor was related to the defend-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))**

Page 4

ant's contacts with the forum state. *Id.* Such jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Id.*

Here, IMMCO argues that this court may assert both general and specific jurisdiction over EFS. Because the court agrees that EFS' contacts with Illinois are enough to this court to exercise specific jurisdiction over it, the court expresses no opinion regarding general jurisdiction.

As noted above, specific jurisdiction applies when the court is asserting jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum."*RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d at 1277,*citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 416. The court may exercise specific jurisdiction over EFS if it "purposefully established minimum contacts within the forum state" and those contacts "make personal jurisdiction fair and reasonable under the circumstances."*RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d at 1277,*quoting Burger King v. Rudzewicz,* 471 U.S. at 476-77. EFS has enough contacts with Illinois that relate to IMMCO's claims to satisfy both of these standards.

1. Minimum Contacts

In examining a defendant's contacts with a particular state, the court must determine whether that defendant "purposefully availed itself of the privilege of conducting activities" in the forum state so that it "should reasonably anticipate being haled into court there."*RAR, Inc. v. Tuner Diesel Ltd.,* 107 F.3d at 1277. In other words, the focus of the court's inquiry must be on "the relationship among the defendant, the forum, and the litigation."*Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*., 906 F.2d 276, 283 (7th Cir.1990). The main factor in the minimum contacts due process analysis is foreseeability. *Burger King,* 471 U.S. at 472-74. Contacts that are "random, fortuitous, or attenuated" are not sufficient to establish that a state's exercise of personal jurisdiction over the defendant had been foreseeable. *Heritage House,* 906 F.2d at 283.

Here, EFS' contacts with Illinois are enough to cause it to reasonably anticipate being haled into court there. EFS' agreement with IMMCO to provide a mold handling system for Kettler in its Illinois foundry shows that EFS purposefully availed itself of the privilege of conducting business activities in Illinois. Moreover, it is entirely foreseeable that EFS could be haled into court in Illinois: it initiated a business transaction with IMMCO directed at Illinois; its alleged misuse of IMMCO's trade secrets for purposes other than the Illinois Kettler project would be against IMMCO's wishes and a violation of the parties' written agreement; and EFS acquired the trade secrets because it was working on the Kettler project. Therefore, we concludes that EFS purposefully availed itself of the privilege of conducting business in Illinois so as to reasonably anticipate being haled into court there.

*4 But do IMMCO's claims also "arise out of" or "relate to" EFS' contacts with Illinois in connection with the Kettler project? *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F.Supp.2d 824, 833 (N.D.Ill.2000) (to establish specific jurisdiction, the plaintiff must show that the defendant's contacts relate to or arise out of the plaintiff's claims). In early 2000, EFS sought out IMMCO and asked it to provide a mold handling system for Kettler's Illinois foundry. IMMCO agreed to assist EFS, which meant that EFS had access to IMMCO's trade secrets.

EFS argues that the Kettler contract is not the basis of IMMCO's complaint. It thus concludes that its Illinois contacts (which relate to the Kettler contract) are not enough to support specific jurisdiction over non-contract claims. The court, however, declines to view the facts in this case in such a tortured fashion. EFS' alleged use of IMMCO's trade secrets in connection with the Kirsh project arose from and related to the written agreement that EFS

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))

Page 5

and IMMCO made in connection with the Kettler project. Simply put, EFS only received IMMCO's trade secrets because it was involved with the Kettler project in Illinois, and it had extensive contacts with Illinois in connection with that project. Therefore, this action "arises out of" and "relates to" EFS' contacts with Illinois.

Finally, what is commonly known as the "effects doctrine" supports the exercise of specific jurisdiction. This doctrine kicks in when a defendant aims intentional, tortious actions at the forum state which harm a plaintiff in the forum state and the defendant knows that the plaintiff would be likely to suffer harm there. *Calder v. Jones,* 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Where the injury is economic, a plaintiff must additionally establish that the defendant intended to affect an Illinois interest. *Real Colors, Inc. v. Patel,* 974 F.Supp. 645, 649-50 (N.D.Ill.1997).

Under the effects doctrine, courts have exercised personal jurisdiction over a defendant who commits a tort against an Illinois business when the injury is felt in Illinois. *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.,* 34 F.3d 410, 411 (7th Cir.1994) ("personal jurisdiction is proper in the state of the plaintiff's principal place of business because the injury primarily occurred where the plaintiff lives"); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.,* 88 F.Supp.2d 914, 920 (N.D.Ill.2000). Therefore, specific jurisdiction can be proper when the injury occurs in Illinois, even if all of the other relevant conduct took place elsewhere. *See Celozzi v. Boot,* No. 00 C 3285, 2000 WL 1141568 at *3 (N.D.Ill. Aug.11, 2000).

Here, as EFS notes, the alleged misappropriation of IMMCO's trade secrets occurred in Missouri. However, it is undisputed that any injury suffered by IMMCO occurred in Illinois. Moreover, EFS knew that IMMCO was an Illinois corporation before it initiated the Kettler project and that IMMCO's trade secrets were provided for the sole purpose of completing that project. Accordingly, IMMCO has sufficiently alleged that it has suffered an economic loss in Illinois due to EFS' alleged misappropriation of its trade secrets. The court thus turns to the second major component of the court's personal jurisdiction inquiry: whether EFS' contacts with Illinois make the exercise of jurisdiction in this court reasonable and fair under the circumstances.

2. Traditional Notions of Fair Play and Substantial Justice

*5 Federal due process requires that the exercise of personal jurisdiction over a nonresident defendant be reasonable. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Pertinent factors include: (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) avoidance of a multiplicity of suits on conflicting adjudications. *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Because no one factor is dispositive, the court must balance all of the factors. *Euromarket,* 96 F.Supp.2d at 840. However, the most important factors to consider are the interests of the forum and the relative convenience of litigating in that forum. *Kohler Co. v. Kohler Int'l, Ltd., et al.,* 196 F.Supp.2d 690, 700 (N.D.Ill.2002).

Here, Illinois has a strong interest in adjudicating injuries that occur within its borders. *Coolsavings.Com, Inc. v. IQ.Commerce Corp.,* 53 F.Supp.2d 1000, 1005 (N.D.Ill.1999). This interest extends to disputes that arise out of business relationships formed between Illinois residents and nonresidents.*Kavo America Corporation v. J.F. Jelenko & Co.,* No. 00 C 1355, 2000 WL 715602 at *5 (N.D.Ill. Jun.2, 2000). Furthermore, Illinois has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))

Page 6

an interest in regulating activities that involve the intellectual property rights of its corporate residents. *Coolsavings,* 53 F.Supp.2d at 1005. Therefore, this Court finds that Illinois has a significant interest in adjudicating disputes that arise from the alleged misappropriation of an Illinois resident's trade secrets.

Second, it would not be unduly burdensome for EFS to litigate in Illinois.*Euromarket,* 96 F.Supp. at 840 (unless the inconvenience of having to litigate in the forum is so great as to deprive the defendant of due process, it will not overcome clear justifications for the exercise of jurisdiction). Traveling from St. Louis to Chicago is not oppressive. *See Euromarket,* 96 F.Supp. at 840 (modern advances in transportation and communication make it more reasonable to litigate in a foreign forum). Indeed, EFS employees have already traveled to Illinois in connection with several contracts with Illinois-based companies, including the Kettler project, and have attended several trade shows and business meetings in Illinois.

IMMCO has a strong interest in having its claim adjudicated in Illinois, since it is an Illinois corporation and its principal place of business is in Illinois. Finally, the record does not show that the location of evidence and witnesses make it unreasonable to efficiently resolve this case in Illinois. Accordingly, EFS' motion to dismiss for lack of personal jurisdiction is denied.

B. Venue

*6 [2] In further pursuit of a one-way ticket back to the "Show Me" state, EFS argues that IMMCO's complaint should be dismissed for improper venue. "[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."28 U.S.C. § 1391(c); *see generally Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1203 (7th Cir.1997). Since EFS is subject to personal jurisdiction in this forum, venue is proper here. EFS' motion to dismiss for improper venue is, therefore, denied.

C. Motion to Transfer

[3] Finally, EFS seeks to transfer this action pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."Under § 1404(a), the party seeking transfer must demonstrate that: (1) venue is proper in the transferor court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *See, e.g., Mattson v. Gerry Wood Products Co.,* No. 95 C 2314, 1997 WL 158334 at *1 (N.D.Ill. Mar.31, 1997). The movant must also demonstrate, "by reference to particular circumstances, that the transferee forum is clearly more convenient."*Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986).

The convenience of the witnesses and the parties is the most important § 1404(a) factor. *Dunn v. Soo Line R.R. Co.,* 864 F.Supp. 64, 65 (N.D.Ill.1994). When evaluating this factor, the court considers: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience to the parties of litigating in the respective forums. *Houck v. Trans World Airlines, Inc.,* 947 F.Supp. 373, 375 (N.D.Ill.1996). The court also considers whether the parties have met their burden of specifically identifying the witnesses they intend to call, as well as the general content of the witnesses' proposed testimony. *See Mattson v. Gerry Wood Products Co.,* 1997 WL 158334 at *1 (collecting cases).

With respect to the interests of justice prong, the inquiry generally centers on judicial economy rather than the litigants' or witnesses' private interests. *Koos, Inc. v. Performance Industries, Inc.,* 747 F.Supp. 487, 491 (N.D.Ill.1990). Relevant consid-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))**

Page 7

erations include the forum's relationship to the cause of action, the court's familiarity with the applicable law and the court's likely access to the sources of proof and other evidence. *Dunn v. Soo Line R Co.,* 864 F.Supp. at 66. Because the task of weighing factors for and against transfer "necessarily involves a large degree of subtlety and latitude," the decision to transfer is committed to the sound discretion of the trial judge. *Coffey v. Van Dorn Iron Works,* 796 F.2d at 219.

*7 In this case, venue is proper in this district as well as the proposed transferee district. Thus, the court will focus on whether transfer will serve the convenience of the parties and witnesses and promote the interests of justice.

1. Private Interests

It is well established that a plaintiff's choice of forum is entitled to substantial weight, especially if it is the plaintiff's home forum. *United Air Lines, Inc. v. Mesa Airlines, Inc.,* 8 F.Supp.2d 796, 798 (N.D.Ill.1998). With respect to the site of material events, EFS' alleged misappropriation of IMMCO's trade secrets occurred in Missouri. However, the physical transfer of IMMCO's trade secrets to EFS occurred in Illinois. Furthermore, IMMCO is an Illinois corporation with its principal place of business in LaGrange Park, Illinois, and all of its employees live in Illinois. On the other hand, EFS' alleged use of IMMCO's trade secrets-including the design, manufacture and sale of the system allegedly incorporating the trade secrets-took place in Missouri. *See Greene Mfg. Co. v. Marquette Tool & Die Co.,* No. 97 C 8857, 1998 WL 395155 *2 (N.D.Ill. Jul.9, 1998). Therefore, this factor is in equipoise.

Unsurprisingly, the parties disagree as to the relative ease of access to sources of proof (including witnesses) in each forum and the cost of obtaining the attendance of witnesses. *See Coolsavings,* 53 F.Supp.2d at 1006. Both locations are likely to be sources of proof, since the employees of both parties are located either in Missouri or Illinois. EFS' alleged misappropriation of IMMCO's trade secrets occurred in Missouri, and therefore, most of the relevant documents are probably in Missouri. In connection with motions to transfer, however, courts should only consider undisputed facts supported by affidavits, depositions, stipulations or other relevant documents, so speculation as to the location of evidence and witnesses is unhelpful. *See Midwest Precision Services, Inc. v. PTM Industries Corp.,* 574 F.Supp. 657, 659 (N.D.Ill.1983). Thus, speculation as to the location of evidence does not weigh in favor of transfer.

In any event, regardless of where the trial is held, all of the relevant documents will have to be sent to the offices of trial counsel in St. Louis and Chicago. *See Coolsavings,* 53 F.Supp.2d at 1006. In addition, modern transportation and communication have made the exchange of documents easier and cheaper, and St. Louis is hardly the Antipodes. *See id.* Thus, the overall relative ease of access to sources of proof do not weigh heavily in favor of either location.

With respect to the convenience of the parties, obviously it is easier for each party to litigate on its home turf. *Clearclad Coatings, Inc. v. Xontal, Ltd.,* No. 98 C 7199, 1999 WL 652030 at *11 (N.D.Ill. Aug.20, 1999) (in assessing the convenience of the parties, the court should consider the parties' respective residences and their ability to bear the expenses of litigating in the particular forum). The witnesses for each party appear to be concentrated in that party's home state. However, the court must also consider the convenience of potential non-party witnesses. IMMCO plans to call employees from the Kirsh foundry in Wisconsin, and these witnesses are indisputably relevant. Chicago is closer to Wisconsin and would be more convenient than St. Louis. Therefore, the interests of the witnesses weighs against a transfer.

2. The Interests of Justice

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.))

Page 8

*8 The interests of justice do not support transfer. First, IMMCO's complaint seeks relief under the Illinois Trade Secrets Act. It is very likely that an Illinois federal court, rather than a Missouri federal court, will be more familiar with an Illinois statute. Second, Illinois has a strong interest in adjudicating injuries to the intellectual property rights of its corporate residents.

Third, the speed at which this case would proceed in Illinois or Missouri does not weigh in favor of either forum. The two most relevant statistics for the purposes of transfer are: (1) the median months from filing to disposition; and (2) the median months from filing to trial. *Brandon Apparel,* 42 F.Supp.2d at 834. Based on these statistics, the average case is disposed of two times faster in the Northern District of Illinois, but the average case proceeds quicker to trial in the Eastern District of Missouri.

In short, after carefully weighing the private and public interests, the court concludes that EFS has not demonstrated that transferring this action to the Eastern District of Missouri is "clearly more convenient" because a majority of the factors either are in equipoise or weigh against a transfer. Therefore, EFS' motion to transfer this action to the Eastern District of Missouri is denied.

III. Conclusion

For the reasons stated above, EFS' motion to dismiss for lack of personal jurisdiction, for improper venue, and for a transfer of venue [4-1] is denied.

N.D.Ill.,2002.
International Molding Machine Co. v. St. Louis Conveyor Co.
Not Reported in F.Supp.2d, 2002 WL 1838130 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.))

Page 1

**H**
Technical Concepts L.P. v. Zurn Industries, Inc.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
TECHNICAL CONCEPTS L.P., an Illinois Limited Partnership, Plaintiff,
v.
ZURN INDUSTRIES, INC., a Pennsylvania Corporation, Defendant.
**No. 02 C 5150.**

Oct. 31, 2002.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.
*1 Pending is Defendant Zurn Industries, Inc. motion to transfer this lawsuit pursuant to 28 U.S.C § 1404(a). For the reasons set forth below this motion is granted.

*BACKGROUND FACTS*

Plaintiff Technical Concepts L.P. ("Technical") is an Illinois partnership having its principal place of business in Mundelein, Illinois (Compl. P 1). Technical manufactures and distributes automatic flush valve actuators, and holds a patent for its actuator under U.S. Patent No. 5,680,879 ("the '879 patent")(*Id.*P 2). Defendant Zurn Industries, Inc. ("Zurn") is a corporation organized and existing under the laws of Pennsylvania, with its principle place of business in Erie, Pennsylvania 16514 (*Id.*P 1). Zurn holds a patent under U.S. Patent No. 5,431,181 ("the '181 patent") for its own actuator (*See Answer*, Ex. A (License Agreement), P 1).

Technical and Zurn are parties to a License and Supply Agreement ("License Agreement") dated March 5, 1999 and a Modification of License and Supply Agreement dated October 6, 2000 ("Modification Agreement") (together, "the Agreements") (Answer, Exhibits A-B). Within these two related agreements, the two companies cross-licensed patents to one another. Zurn licensed Technical under its '181 patent, and Technical licensed Zurn under its '879 patent (*Answer*, Ex. A).

Section 8.2 of the License agreement states "[i]f either party is in breach of this Agreement, the breaching party cannot sue the other for patent infringement."((Answer, Ex. A) (License Agreement), P 7). The License Agreement further provides "[n]otice of breach by either party shall be given by providing sixty (60) days written notice to the other party of said breach."*Id.* Lastly, it states "[a]ny breach may be cured with thirty (30) days," and if a party fails to correct a breach, the other party "has the option of terminating this Agreement."*Id.*

On March 12, 2002, Zurn provided written notice to Technical, alleging that Technical had committed numerous breaches of the Agreements (*Def. Br. Mot. Trans.*, P. 3). On March 25, 2002, Technical filed a complaint against Zurn in the Northern District of Illinois seeking a declaratory judgment that it did not infringe Zurn's '181 patent. *Id.* The case was assigned Case No. C 2136 and assigned to Judge Castillo, who dismissed this complaint for failure to properly allege jurisdiction and venue. *Id.* On April 19, 2002, Technical filed another complaint again seeking a declaration that it did not infringe Zurn's '181 patent, under which it was still licensed. *Id.* This complaint was again assigned to Judge Castillo, and was given Case. No. 02 C 2827.On April 26, 2002, Judge Castillo again dismissed this complaint without prejudice. *Id.* Technical filed a motion to reconsider the April 26th dismissal, and on September 9, 2002, Judge Castillo granted Technical's motion to reconsider. *Technical Concepts, L.P. v. Zurn Industries, Inc.,* 2002 U.S. Dist. LEXIS 16925 (N.D.Ill. Sept. 10, 2002). However, Judge Castillo transferred the case to the Western District of Pennsylvania *sua sponte*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.))**

Page 2

under 28 U.S.C. 1404(a), stating that the "pleadings and issues in this case indicates that venue is more appropriate" in the transferee district. *Id.* at *6.

**\*2** On May 14, 2002, Zurn filed a patent infringement suit in the United States District Court for the Western District of Pennsylvania at Civil Action No. 02-159-Erie, alleging that Technical had infringed its '181 patent (*Def. Br. Mot. Trans.*, P 4). This action is still pending. On July 19, 2002, Technical filed the instant lawsuit against Zurn, alleging the infringement of the '879 patent. On August 21, 2002, Zurn filed a motion to transfer under 28 U.S.C. § 1404(a) this case to the Western District of Pennsylvania. The motion to transfer is granted.

### DISCUSSION

A motion to transfer is governed by 28 U.S.C. § 1404(a). Under 1404(a), a federal district court may "for the convenience of the parties and witnesses and in the interest of justice ... transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a); *Coffee v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). A section 1404(a) transfer is appropriate only where "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice."*United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F.Supp.2d 796, 798 (N.D.Ill.1998). Because determining whether transfer is appropriate "involves a large degree of subtlety and latitude," and is made on a case-by-case basis, it is therefore "committed to the sound discretion of the trial judge."*Coffee*, 796 F.2d at 219;*Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 959 (N.D.Ill.2000).

To aid the trial judge in determining the final element of the 1404(a) analysis, the party seeking to transfer venue "has the burden of establishing, by reference to particular circumstances, that the transfer forum is clearly more convenient" than the transferor court. *Coffey*, 796 F.2d at 219-20. In making a transfer determination, the court must consider both the private interests of the parties and the public interests of the Court. *Medi USA v. Jobst Inst., Inc.*, 791 F.Supp. 208, 210 (N.D.Ill.1992). Factors for the court to consider in assessing private interests include: (1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses. *Amoco Oil*, 90 F.Supp.2d at 960. Public interest factors or interests of justice "relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale."*VonHoldt v. Husky Injecting Molding System Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill.1995). These interests of justice "may be determinative in a particular case, even if the parties and witnesses might call for a different result."*Coffey*, 796 F.2d at 220.

**\*3** Venue in patent infringement actions is controlled by 28 U.S.C. § 1400(b), which provides: "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."Zurn, the defendant in this case, resides in the Western District of Pennsylvania. Because venue is proper in both this district, and under 28 U.S.C. § 1400(b), in the Western District of Pennsylvania, the only issues that remain to be decided pertain to the convenience of the parties and witnesses, as well as the interests of justice.

A. Private Factors

i. Plaintiff's Choice of Forum and Site of Material Events

Generally, a plaintiff's choice of forum is given substantial weight where it is the plaintiff's home forum. *United Air Lines*, 8 F.Supp.2d at 798;*Amoco Oil*, 90 F.Supp.2d at 960;*Macedo v. Boeing Co.*,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.))**

Page 3

693 F.2d 683, 688 (7th Cir.1982). However, while the plaintiff's choice is an important consideration, it is not absolute in determining whether a motion to transfer should be granted. *Amoco Oil,* 90 F.Supp.2d at 960. Specifically, where the plaintiff's choice of forum has "relatively weak connections with the operative facts giving rise to the claim," it is afforded less importance and becomes only one of many factors considered by the court. *Von Holdt,* 887 F.Supp. at 188; *Amoco Oil,* 90 F.Supp.2d at 961.

In order to determine the appropriate weight that should be accorded to the plaintiff's choice of forum, it is necessary to consider the site of material events. This claim arises out of the defendant's alleged infringement of the plaintiff's '879 patent. Technical argues that this claim has a strong connection to the Northern District of Illinois because Illinois is its home forum, and that a few named entities within the Illinois have sold and distributed Zurn's allegedly infringing product. However, as Technical has admitted, Zurn's product is also distributed in across the United States, and "sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Energaire Corp. v. E.S. Originals, Inc.,* 1999 U.S. Dist. LEXIS 17304, at * 7 (N.D.Ill. Oct. 27, 1999), quoting *Anchor Wall Systems, Inc. v. R & D Concrete Prods., Inc.,* 55 F.Supp.2d 871, 874 (N.D.Ill.1999); *Pl. Opp. to Def. Mot.,* P 6.; see also *Berol Corp. v. BIC Corp.,* 2002 U.S. Dist. LEXIS 12932, at *14 (N.D.Ill. Jul. 3, 2002). Thus, the fact that a few entities in Illinois sell the allegedly infringing product does not establish a particularly strong connection between Illinois and this cause of action.

Conversely, not only is Zurn a Pennsylvania corporation with its principal place of business in that district, the cause of action also primarily arose in Pennsylvania. The License Agreements between parties, through which the '879 patent was originally licensed to Zurn, was negotiated, prepared and completed in the Western District of Pennsylvania. The laws of Pennsylvania govern the Agreements. Further, the allegedly infringing products were designed in Pennsylvania and Mr. Harrinder Singh, one of the developers of the original Zurn product resides in Erie Pennsylvania. These factors are due considerable weight because in infringement cases, "the location of the infringer's principle place of business is often the critical and controlling consideration" because such suits "often focus on the activities of the alleged infringer, its employees, and its documents" rather than upon those of the plaintiffs. *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott L.P.,* 807 F.Supp. 470, 474 (N.D.Ill.1992); *Energaire,* 1999 U.S. Dist. LEXIS 17304, at *8.

*4 This cause of action did not arise in Illinois. Pennsylvania is the primary site of material events. Accordingly, because Technical has chosen a forum that has a tenuous connection to the claim, its choice of forum is afforded reduced valuein the Court's analysis. Thus, these two factors favor the transfer to Pennsylvania.

ii. Relative Ease of Access to Evidence and Convenience of the Parties

The Court next considers "the residence of the parties and their ability to bear the expense of trial in a particular forum." *Medi USA,* 791 F.Supp. at 210. While both parties raised the issue of transporting documents, the ability or inability of either party to bring relevant documents to court that are not already located within the district "neither militates for or against transfer." *Hanley v. Omarc, Inc.,* 6 F.Supp.2d 770, 775 (N.D.Ill.1998). Also relevant to this consideration is the fact that the instant case is patent case. As already stated, in infringement cases, more focus is placed upon the defendants' activities, documents, and employees. *Habitat,* 807 F.Supp. at 474 (N.D.Ill.1992). Thus, "[a] number of courts have recognized that 'practicality and convenience are best served when a patent case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business so as to facilitate the pro-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.))**

Page 4

duction and investigation of books, records and other date necessary to the discovery and trial techniques employed in the patent field.'" *Ardco, Inc. v. Page, Ricker, Felson Marketing, Inc.*, 1992 U.S. Dist. LEXIS 14299, at *16-*17, 25 U.S.P.Q.2d (BNA) 1382, 1386 (N.D.Ill.1992), *quoting Spound v. Action Industries, Inc.*, 369 F.Supp. 1066, 1069 (N.D.Ill.1974). As discussed before, the allegedly infringing product was designed in Pennsylvania, and Zurn has a regular and establish place of business there. A further relevant consideration to the convenience element is the fact that the related '181 patent litigation between these two parties is already pending in Pennsylvania, and, thus, Technical already must travel to Pennsylvania to defend itself. *See Berol*, 2002 U.S. Dist. LEXIS 12932, at *17. Together, these factors weigh in favor of transfer.

iii. The Convenience of Witnesses

The identification of "potential, non-party witnesses who will be inconvenienced in having to travel to another forum to provide testimony" in an action is relevant to determining which venue is most convenient for the witnesses. *Amoco Oil*, 90 F.Supp.2d at 961. This consideration is "often viewed as the most important factor in the transfer balance."*Hanley*, 6 F.Supp.2d at 775. In making this assessment, the number of witnesses located in each forum and the importance of their testimony must be considered. *Medi USA*, 791 F.Supp. at 210. The party seeking a transfer must "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included."*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989). Less weight is assigned to the location of employee-witnesses because they would presumably voluntarily appear to defend the suit. *Hanley*, 6 F.Supp.2d at 775.

*5 Zurn claims that its primary witnesses who will testify on Zurn's design, manufacture and sale of the allegedly infringing products are Zurn employees who are located in Pennsylvania. In its original motion to transfer, Zurn only specifically listed Robert Saadi and Alex Marini, the president of Zurn, as "key witnesses," and provided a declaration by Mr. Saadi that he and Mr. Marini personally negotiated the terms of the License Agreements, and that both he and Mr. Marini live in Erie, Pennsylvania. Mr. Saadi also stated that Zurn has no witnesses within the state of Illinois. In its reply, Zurn additionally listed Michael Vieyra, another Zurn employee, as a witness. Zurn also named two non-party, non-employee witnesses: Mr. Harinder Singh, who is one of the named developers of Zurn's '181 patent and lives in Erie, Pennsylvania, and Mr. Brian Creager, a former Zurn employee who is another named inventor of the '181 patent who now lives in Atlanta, Georgia.

Technical also provided the names of witnesses it planned to call during trial. Technical plans to offer the testimony of Mr. Vince McNeill to establish the non-obviousness of the patented invention, Mr. George Murphy to establish the lack of any non-infringing substitutes, and Mr. David York to testify as to Technical's lost profits. All three are all employees of Technical and reside in the Northern District of Illinois. Technical also listed two non-party witnesses, Mr. Kenneth Murderlak, and inventor of the '879 patent who resides in Milwaukee and Sherwood, Wisconsin and Mr. Hsieh, another named inventor of the '879 patent who resides in Taiwan. According to Technical, Mr. Murderlak will testify as to how the patented device was conceived and how it operates and functions in relation to Technical's patented device.

Each party specifically listed three employee witnesses, which are given less weight. Each party also specifically listed two non-employee witnesses, all of whom are inventors of the patents at issue between the two parties. Thus, the issue of convenience of the each side respective witnesses is neutral.

iv. Convenience of the parties

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.))**

Page 5

In evaluating the convenience of the litigants, the court considers their residences and their ability to bear the expenses of litigating in a particular forum. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.,* 42 F.Supp.2d 821, 833 (N.D.Ill.1999)."Transfer is inappropriate if it 'merely transforms an inconvenience for one party into an inconvenience for the other party.'" *Id.* quoting *Chemical waste Mgmt. v. Sims,* 870 F.Supp. 870, 876 (N.D.Ill.1994). In light of the ongoing litigation taking place in Pennsylvania this factor weighs in favor of Zurn.

B. Public Factors/Interests of Justice

The interests of justice component of the 1404(a) analysis concerns the "efficient administration of the court system,"*Coffey,* 796 F.2d at 221, embracing "traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses."*TIG Ins. Co. v. Brightly Galvanized Products, Inc.,* 911 F.Supp. 344, 346 (N.D.Ill.1996).

i. Court's Familiarity with Applicable Law

*6 Patent infringement is a question of federal law, and is one that both this court and the Western District of Pennsylvania are both equally competent to hear and decide upon. Pennsylvania law is also implicated in this case in that it governs the License Agreements. However, while the Pennsylvania court is more familiar with its own substantive laws, courts often decide substantive legal questions based on another state's laws. *Amoco Oil,* 90 F.Supp.2d at 962. Further, where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts. *Bodine's, Inc. v. Sunny-O, Inc.,* 494 F.Supp. 1279, 1286-87 (N.D.Ill.1980). Thus, this issue neither weighs in favor or against the transfer.

ii. Speed at Which the Case will Proceed to Trial

Technical and Zurn cite different statistics as to the speed at which the case will proceed to trial in each respective district. To determine the relative speed, the court looks to the Federal Court Management Statistics for "(1) the median months from filing to disposition and (2) the median months from filing to trial."*Amoco Oil,* 90 F.Supp.2d at 962. According to the 2001 Annual Report of the Director (Leonidas Ralph Mecham) on Judicial Business of the United States Courts, which is the most recent report, the median months from filing to disposition (where there is no court action) in the Western District of Pennsylvania is 8.1, and the median in the Northern District of Illinois is 5.1 months. *See* Table C-5, U.S. District Courts: Median Time Intervals from Filing to Disposition of Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2001, *available at* http://www.uscourts.gov/judbus2001/contents.html.
The median time from filing to trial in Pennsylvania is 27.0 months, and in Illinois it is 25.4 months.*Id.* Because there is a slightly higher backlog in Pennsylvania, this factor weighs against transfer.

iii. Presence of Related Litigation

Another relevant consideration in the interests of justice is the presence of related litigation. *Black & Decker Corp. v. Vermont Am. Corp.,* 915 F.Supp. 933, 939 (N.D.Ill.1995), citing *Wysnoski v. Millet,* 758 F.Supp. 439, 445 (N.D.Ill.1991). Generally, in order to achieve "efficient administration of justice," cases "should be transferred to the district where related actions are pending."*Carus Corp v. Greater Texas Finishing Corp.,* 1992 U.S. Dist. LEXIS 908, at *4-*5 (N.D. Ill. Jan. 31 1992). Specifically, "[w]hen pending litigation involves the same parties and similar legal, technical and infringement issues, transfer to that venue is logical and strongly favored."*Berol,* 2002 U.S. Dist. LEXIS 12932, at *17 n. 5, *citing Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29 (N.D.Ill.1980).The '879 patent case and the '181 case that is currently pending in the Western Dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.))**

Page 6

trict of Illinois involve the same parties, the patents were cross-licensed in the same License Agreements, and the same technical and infringement issues are implicated because both patents apply to parts of the same product, the flush valve actuator. Technical has answered the Pennsylvania complaint and not sought transfer to Illinois. This factor weighs in favor of transfer because both of these actions involve issues relating to the cross-license agreement.

iv. Relation of the Community to the Occurrence and the Desirability of Resolving Controversies in their Locale

*7 "Resolving litigated controversies in their locale is a desirable goal of the federal courts."*Doage v. Board of Regents,* 950 F.Supp. 258, 262 (N.D.Ill.1997). Technical argues that the Northern District of Illinois has an interest in protecting its citizens from infringement and preventing infringers from operating within its boundaries. While this is true, it is also true that the accused product is distributed and sold throughout the United States. Thus, several states, including Pennsylvania, presumably share Illinois' interest in redressing the alleged infringement. Further, because infringement actions are usually associated with the defendant's activities, which in this case are concentrated in Pennsylvania, these combined factor favors transfer to Pennsylvania. *See Berol,* 2002 U.S. Dist. LEXUS 12932, at *18; *Energaire,* 1999 U.S. Dist. LEXIS 17304, at *14.

*CONCLUSION*

Zurn's motion to transfer venue[# 5-1] to the Western District of Pennsylvania with respect to Technical's action against Zurn is granted pursuant to 28 U.S.C. § 1404(a), and orders the Clerk of the Court to transfer this case to the Western District of Pennsylvania and close this case in this District.

SO ORDERED

N.D.Ill.,2002.
Technical Concepts L.P. v. Zurn Industries, Inc.
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.